PAUL GIMMARRO v. KANSAS CITY, MISSOURI, a Municipal Corporation, Appellant.—116 S. W. (2d) 11.

Division Two, May 3, 1938.*

*NOTE: Opinion filed at May Term, 1937, August 26, 1937; motion for rehearing filed; motion overruled December 17, 1937; motion to transfer to Court en Banc filed; motion overruled at May Term, 1938, May 3, 1938.

George Kingsley, Francis L. Roach and Marcy K. Brown, Jr.,
for Kansas City.

*John V. Hill, Trusty & Pugh* and *Guy Green, Jr.*, for respondent.

432

WESTHUES, C.—Plaintiff, respondent, sued defendant, appellant, to recover damages for personal injuries alleged to have been sustained through the negligence of the city. A trial resulted in a verdict and judgment for plaintiff in the sum of $8,000, and defendant city appealed.

The evidence justifies the following statement of facts: Respondent was a member of a working crew which was digging a trench for the purpose of laying water mains. At the time plaintiff received his injuries the crew was digging a trench up a steep grade, south of Cliff Drive, in Kansas City, Missouri. Much rock was encountered, which was loosened by blasting. The men then removed the rock and placed it upon the slope of the hill beside the trench. On the morning when plaintiff was injured, the foreman directed plaintiff to dig in the trench and remove dirt. Other members of the crew were instructed to remove rock at a point above plaintiff. While plaintiff was performing his duties, a rock, which had been taken from the trench, rolled down the hill and struck plaintiff, seriously injuring him.

Plaintiff charged in his petition that the work was being performed in a dangerous manner; that no barricade had been constructed to keep rocks from rolling down in the trench where he was ordered to work. Other charges made in the petition need not be noticed. The answer of defendant was a general denial and a plea of contributory negligence. Defendant also alleged that plaintiff had, for a valuable consideration, signed a release for any claim arising out of the accident. Appellant city contends that the evidence was insufficient to sustain a charge of negligence. It is argued that no negligence was shown; that the work was transitory in nature; that respondent and his fellow workmen created whatever danger there might have been; that if negligence was shown it was negligence of a fellow servant. It is also asserted in the brief that the occurrence was accidental and could not have been anticipated.

The testimony of the foreman, on the job at the time of the accident, disposes of a number of the contentions mentioned. On cross-examination this witness testified as follows:

"I cautioned the men to be careful while handling rock several times a day because we were handling rock on the side of a steep hill and it was kind of a particular place; it was pretty steep place right on the bluff and the reason I cautioned the men was because the place was so steep that rock might roll down. I really knew that; not just believed it. I knew from working on that bluff if anything would happen the rock were bound to roll down. In other words, if rock would get away it was quite likely that it would roll down and I told the men to be as careful as they could about handling rock at all times so as not to let one get loose. I was afraid if one would get loose it might come down and hurt someone."

The foreman, therefore, knew of the very danger that caused the injury to the plaintiff. Plaintiff was not one of the workmen re-

moving the rock at that point, and therefore no negligence of his contributed to the falling of the rock. Neither was plaintiff instructed to build a barricade. Appellant asserted that it was impracticable to build a barricade at this point, but the evidence does not justify that assertion. We find the following in appellant's statement of facts:

"After the material taken out of the ditch was laid along the side of the ditch, it would make a barricade in and of itself if piled up and the evidence shows that it was piled up in this manner.

"With relation to the unsafety of respondent's place to work, respondent's evidence is confined to only one specification of negligence, that is, failure to erect barricades. Evidence on behalf of respondent was that no specially built barricades existed and also that the customary means to keep rocks from rolling down hill when trenches are being laid uphill would be the construction of a block or barricade or wing."

If a barricade was being constructed, at the time, with the rock that was being removed, and defendant knew, that before such barricade was constructed plaintiff was in danger, then certainly a jury had a right to find that such a method of doing the work was dangerous and constituted negligence on the part of the defendant. The evidence, therefore, justified the finding that plaintiff was injured while a barricade was being constructed. During this time, as the foreman testified, there was danger of rock rolling down the slope into the trench below, where plaintiff was at work. It was the method of doing the work, therefore, that created the danger. [Snyder v. American Car & Foundry Co., 322 Mo. 147, 14 S. W. (2d) 603, l. c. 607 (4-7).] The defendant owed plaintiff the duty of furnishing him a reasonably safe place in which to work. [Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S. W. 764; Dell v. J. A. Schaefer Const. Co., 29 S. W. (2d) 76, l. c. 77 (1, 2).] In the Snyder v. American Car & Foundry Co., supra, this court said:

"It is not disputed that plaintiff was directed by defendant, through its foreman, Wenchel, to finish the job of painting the car which stood on the shipping track, and that it was necessary for him to stand on a ladder, with his back toward the steel track, while engaged in doing that work. And it is admitted, by both Kellerhouse and Rodgers, that Rodgers was directed by defendant, through its foreman, Kellerhouse, to roll the wheels on the steel track, while plaintiff was so engaged. It was defendant's duty to exercise ordinary care to keep plaintiff's place of work reasonably safe, and that duty was a nondelegable one. The work Rodgers was directed to do affected the security of the place where plaintiff was directed to work, and it was defendant's duty to see that Rodgers did not perform said work in a negligent manner. There is substantial

evidence tending to show that Rodgers was negligent in performing said work, in failing to warn plaintiff of the danger incident thereto, and for that negligence defendant is liable.''

·That principle of law is applicable here. The foreman ordered plaintiff to work in the trench. He also ordered others to remove rock from the trench above the point where plaintiff was at work, knowing at the time that rock was likely to roll down and strike plaintiff. The demurrer to the evidence was properly overruled.

█ We have also concluded that the evidence was sufficient to sustain a finding that the alleged release was void. Plaintiff testified that he could not read; that about a week after he went back to work the timekeeper, Frank Lapatina, informed him that Joe Galucci wanted to see him; that Galucci had some wages for him. Galucci was employed at the city hall in the water department. Plaintiff testified that he went to the city hall. His evidence as to what transpired is as follows:

''Q. Did you have a talk with Joe there, before you got the money? A. When I went in I asked, I said, 'Joe, what you want?' He said, 'I have got some wages for you.' I said, 'How much?' 'Well', he said, I believe he said, '$162 and some cents,' and he says —I says—'How do you figure it?' He says, 'Wages by the month.' I said, 'How about my back?' He said, 'Your back get better, and the doctor said you got no broken bones—a little sore, and it would go away.'

''Q. Then, did he give you the money, or how did you get the money, is what I want to get at? A. He taken me around to his office, around the hall there, he got papers—I don't know what it was. He said it was a receipt. He had the check, and they paid. He said, 'Here, Paul, sign this.' I said, 'What is this?' He said, 'A receipt for your wages.' I said, 'I can't read.' He said, 'Oh, you don't have to read.' He said, 'I will read it to you'—while he was holding it in his hand, like this folded. I don't know if he read it or not. He said, 'That is a receipt from Kansas City for $162.80, that is your time you have been working.' ''

The following letter formed the basis of the alleged release:

''Mr. Wm. F. Fleming,

''Director of Water Dept.

''Dear Sir:

''Attached hereto find accident and doctor's reports in regard to Paul Gimmaro, laborer, pipe line section, who claims to have been injured while in the discharge of his duties and lost 37 days' time (Aug. 3, to Sept. 16, 1931) on account of such injuries.

''I respectfully recommend that he be paid the sum of $162.80

upon execution of proper release and subject to the approval thereof of the director of the law department.

"Yours truly,

"(Signed) T. D. Samuel, Jr.

"Chief Engineer & Supt."

It will be noted that this amount corresponds with the wages to which plaintiff would have been entitled had he been on duty during that time.

A witness for the defendant testified as follows:

"The check for $162.80 covers 37 days, according to the letter; that is regular work days in that period of time or the number of days the gang worked in that period of time or the number of days if he had been well and had worked with the gang he would have worked, and that would have been the exact amount of wages that he would have earned during that time if he hadn't been sick and had worked every day the gang worked."

Joe Galucci testified for the defendant. On cross-examination we note the following:

"Q. Isn't it a fact that you told Paul this money was for wages that he was going to get? A. I took Paul in in an effort to get his money.

"Q. Isn't it a fact that when he came in there you told him it was for wages? Try to remember that. A. That it was for money that was coming to him—I don't know whether I called it wages or not, but it was money he had coming to him.

"Q. And you thought it was wages when you talked to him that day? A. That it was money he had coming to him.

"Q. You understood that it was, and just what did you tell him? A. I don't know whether I told him that or not, but it was money he had coming, and when I gave it to him. . . .

"Q. You know Mr. Lapatina? A. Peter Lapatina?

"Q. I guess that is his name. A. Yes.

"Q. Do you remember telling Mr. Lapatina to have Paul come in? A. Not Peter Lapatina .

"Q. Frank Lapatina, I mean. A. I may have.

"Q. And you wanted him to come in about this $162, or about the money that he was to get? A. That is right."

The check given plaintiff was dated, September 30, 1931. The release was dated, October 12, 1931. The check was written before the question of the alleged release was discussed with the plaintiff. The circumstances support plaintiff's evidence that he was led to believe that the defendant was paying him wages for the time he was out of work on account of the injuries sustained, and that the release signed was only a receipt for such wages. One of defendant's witnesses testified that it had always been the custom of the city

to allow a man his wages when he had been hurt. This was not denied by anyone. The question of setting aside a release was discussed and considered at length by this court in Poe v. Ill. Cent. Railroad Co., 339 Mo. 1025, 99 S. W. (2d) 82. That case presented a close question, as will be noted from the decision on the first appeal, where a different result was reached. [Poe v. Ill. Cent. Railroad Co., 335 Mo. 507, 73 S. W. (2d) 779.] The evidence of plaintiff in this case was far more convincing than the evidence of the plaintiff in the Poe case. The evidence of the defendant in this case in many respects corroborated that of the plaintiff. We hold, therefore, that the evidence was sufficient to support the verdict.

■ Appellant complains of Instruction No. 1, given for plaintiff. It is asserted in the brief that the instruction gave the jury a roving commission to determine negligence and want of care of appellant; that it failed to cover the defense of fellow servant, contributory negligence, assumption of risk, release and ratification thereof; that it was broader than the pleadings and assumed that it was not reasonably safe to do the work in the manner shown by the evidence. The instruction is not subject to the criticism leveled against it. It specifically required the jury to find all of the facts necessary to support a verdict for plaintiff. In substance, omitting details, it required the jury to find, before a verdict was authorized, that plaintiff was required to work in the ditch; that other workmen were required to take out rock up the hill from plaintiff; that the foreman could have, in the exercise of ordinary care, foreseen that rock was likely to roll down hill and endanger plaintiff, and it then became the duty of defendant, in the exercise of ordinary care, to provide reasonable means of keeping the rock from rolling down into the ditch where plaintiff was working. The instruction further required the jury to find, to justify a verdict for plaintiff, that by ordinary care the defendant could have kept the rock from rolling down into the ditch; that a reasonably careful and prudent person, in the exercise of ordinary care, would have done so; that if the defendant did not exercise such ordinary care then defendant was guilty of negligence; and that such negligence, if any, was the direct cause of the rock rolling into the ditch and the direct cause of plaintiff's injuries. The instruction concluded by informing the jury that if plaintiff signed a valid release then they could not find for plaintiff. The instruction was strictly within the pleadings and the issues made at the trial. It was not necessary for the instruction to embody the theory of fellow servant or assumption of risk. The fellow servant doctrine has no application where the dangerous condition is brought about by the manner in which the work is being performed at the direction of the foreman. [Schuh v. American Car & Foundry Co., 241 S. W. 641.] In this

case liability was predicated upon the theory that the master failed to furnish plaintiff a reasonably safe place to work. The jury was required to so find before a verdict was authorized. It was the master's duty, not plaintiff's fellow servant's, to furnish a reasonably safe place to work. [39 C. J., p. 308, sec. 441; Dell v. Schaefer Const. Co., supra, Bender v. Kroger Grocery & Baking Co., 310 Mo. 488, 276 S. W. 405, l. c. 407 (2); Wall v. Philip A. Rohan Boat, Boiler & Tank Co., 333 Mo. 619, 62 S. W. (2d) 764, 767 (1-6).]

█ As to assumption of risk, suffice to say that the doctrine does not apply where the injury is caused by the negligence of the master, as was said by this court in Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S. W. 764, l. c. 772 (10, 11):

"The doctrine of assumed risk rests upon contract, express or implied, between the master and the servant, whereby the servant agrees to assume the risk of those dangers which are usual and incident to his employment. But, while the servant is said to assume the ordinary and usual risks incident to his employment, it is the thoroughly established rule in this State that the servant never assumes a risk which is the outgrowth, or result, of the master's negligence. [Fish v. Railway Co., 263 Mo. 106, 172 S. W. 340, Ann. Cas. 1916B, 147; Charlton v. Railroad Co., 200 Mo. 413, 98 S. W. 529; Williams v. Pryor, 272 Mo. 613, 200 S. W. 53.] The reason of the foregoing rule is that it is against public policy for a master to contract against his own negligence."

█ Appellant offered an instruction on contributory negligence. This instruction was based upon the theory that if plaintiff knew, or by the exercise of ordinary care could have known, that the rock was dropped and was rolling down the hill toward plaintiff, and that plaintiff thereafter failed to take a position of safety, then plaintiff could not recover. There was no evidence to support this instruction. The evidence disclosed that plaintiff was digging in the ditch and was in a stooping position while the rock was rolling toward him. The foreman called, and plaintiff began to run, not knowing what had occurred. Before he could get away the rock struck him. Plaintiff could not perform his duties and at the same time keep looking up the hill where the other men were working. Plaintiff was in a ditch, the other men were above him, and it was therefore impracticable for plaintiff to be watching for rocks coming toward him. The situation is so self-evident that citation of authorities is not necessary to support the statement, that the evidence did not justify the offered instruction.

We have considered all points briefed and have concluded that the judgment must be affirmed. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.