

In the

Missouri Court of Appeals

Western District

| | | |
|---|---|---|
| SKYLER LEEPER, | ) | |
| | ) | |
| Appellant, | ) | WD76772 |
| | ) | |
| v. | ) | OPINION FILED: May 27, 2014 |
| | ) | |
| ANDY ASMUS, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Morgan County, Missouri**
The Honorable G. Stanley Moore, Judge

Before Division One: Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Karen King Mitchell, Judge

This case involves a claim of co-employee liability for a workplace injury which

occurred between the 2005 and 2012 amendments of the Workers' Compensation Act

("Act"). Skyler Leeper ("Leeper") appeals from the trial court's dismissal of his amended

petition for failure to state a claim. Leeper's amended petition alleged that co-employee

Andy Asmus ("Asmus") breached a personal duty of care owed to Leeper when Asmus

failed to perform his job duties in the safe manner in which he had been directed, causing

Leeper's injuries. Leeper argues that his amended petition sufficiently pled a cause of action for co-employee negligence at common law.

In *Hansen v. Ritter*, 375 S.W.3d 201, 213 (Mo. App. W.D. 2012), we addressed the subject of co-employee negligence. Our discussion was necessitated by the 2005 amendment to section 287.800 which required the Act to be strictly construed, and by our decision in *Robinson v. Hooker*, 323 S.W.3d 418, 423-25 (Mo. App. W.D. 2010), where we held that strict construction no longer permitted us to construe the Act to immunize co-employees by sweeping their conduct into the statutory definition of "employer." We held that for workplace injuries subject to the 2005 amendment of the Act, injured employees could separately pursue a cause of action against negligent co-employees so long as the co-employee owed the injured employee a duty of care at common law. *Hansen*, 375 S.W.3d at 213-14.

In response to *Robinson*, the legislature amended section 287.120.1 of the Act in 2012 to expressly extend the Act's exclusivity protection to co-employees unless an employee is injured as a result of the co-employee's "affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." *Shaw v. Mega Indus., Corp.*, 406 S.W.3d 466, 474 n.5 (Mo. App. W.D. 2013) (recognizing that "[t]he legislature responded to the *Robinson* decision by enacting amendments to section 287.120.1 in 2012"). The 2012 amendment to the Act will limit the practical relevance of *Robinson*, *Hansen* and this Opinion to workplace injuries that occur between the effective dates of the 2005 and 2012 amendments of the Act. However, because Leeper's workplace injury occurred between the 2005 and 2012 amendments to the Act, we must

2

determine whether Leeper's amended petition states a claim for co-employee negligence at common law.

In *Hansen*, we held that at common law, a co-employee who has violated a personal duty of care owed to a fellow employee is answerable for the consequences of his negligence. 375 S.W.3d at 213. However, a co-employee owes no personal duty of care to perform the employer's nondelegable duties. *Id.* We were not required in *Hansen* to definitively determine whether a co-employee's common law duty of care is the functional equivalent of "something more," a test announced in *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 180 (Mo. App. E.D. 1982), and later refined to afford co-employees workers' compensation exclusivity protection unless they engage in purposeful, affirmative acts directed at another employee. *Hansen*, 375 S.W.3d at 217. This case requires us to resolve that question.

We conclude that the refined "something more" test does not align with the common law of co-employee negligence. At common law, a co-employee violates a personal duty of care when the employer has performed its continuing nondelegable duties, and an otherwise safe work place, work instrumentality, or work method, is rendered unsafe due solely to the co-employee's negligent act or omission, a determination that does not equate with purposeful, affirmative acts directed at another employee.

Because Leeper's amended petition sufficiently alleges facts to support the existence of a personal duty of care at common law, the trial court's judgment dismissing

3

Leeper's action with prejudice is reversed and this cause is remanded for further proceedings consistent with this opinion.

## Factual and Procedural History

Leeper filed a petition asserting a claim of negligence against Asmus, a co-employee. The petition alleged that on August 12, 2011, Leeper was injured while working with Asmus; that Asmus was operating a Schramm drilling rig while Leeper was guiding a 500-pound pipe into the tower of the drilling rig; and that when Asmus began lifting the pipe with the drilling rig winch, the cable was loose which resulted in the pipe breaking free and crushing Leeper's arm. Leeper asserted that Asmus failed to exercise ordinary care and was negligent because Asmus failed to operate the drilling rig in a safe manner and failed to ensure the cable was tight before lifting the pipe.

Asmus filed a motion to dismiss the petition for failing to state a claim. Asmus argued that he did not owe Leeper a personal duty of care to perform his job duties independent of the employer's nondelegable duty to provide a safe workplace. The trial court sustained the motion to dismiss and gave Leeper thirty days to file an amended petition.

On April 29, 2013, Leeper filed an amended petition which alleged the following, pertinent to this case:

> 8. In the process of attaching the cable to the 500-pound pipe, the job duty of the operator of the drilling rig's w[i]nch is to ensure that the cable is tight as the 500-pound pipe is lifted, otherwise the 500-pound pipe will become unsecure and fall resulting in catastrophic injury to any fellow co-employees in the path of the falling 500-pound pipe.

4

9. At the above time and place, Defendant was responsible for and had the job of operating the drilling rig w[i]nch.

10. At the above time and place, Defendant started to lift the 500-pound pipe with a loose cable while Plaintiff guided the 500-pound pipe into the tower of the drilling rig.

11. At the above time and place, Defendant operated the drilling rig while the cable was loose causing the 500-pound pipe to break free and crush Plaintiff's left arm.

12. At the above time and place, *Defendant was personally negligent in operating the drilling rig in that he violated his job duty in operating the drilling rig [winch] by lifting the 500-pound pipe without ensuring that the cable was tight*.

13. At the above time and place, *Defendant was independently negligent in operating the drilling rig in that he violated his job duty in operating the drilling rig winch by lifting the 500-pound pipe without ensuring that the cable was tight*.

14. In lifting the 500-pound pipe with a loose cable, *Defendant created a dangerous and hazardous condition in that he lifted the 500-pound pipe without ensuring that the cable was tight*.

15. *A 500-pound pipe falling from a Schramm drilling rig is not a normal risk of operating and working on a Schramm drilling rig* and as a result, the *Plaintiff was subjected to a risk which was something more than the normal risk of operating and working on a Schramm drilling rig*.

16. At the above time and place, Defendant failed to use that degree of care, skill and knowledge customarily used by a drilling rig operator and in doing so violated his job duties and responsibilities as set forth above and subjected the Plaintiff to a risk that was something more than the normal risk associated with the work of the Plaintiff.

17. At the above time and place, Defendant failed to exercise ordinary care and was thereby negligent in, including but not limited to, one or more of the following respects:

    a. Defendant failed to operate the drilling rig in a safe manner.

5

b. Defendant failed to check to ensure the cable was tight before lifting the 500-pound pipe.

c. Defendant lifted the 500-pound pipe with a loose cable.

18. ***The acts of Defendant were*** affirmative negligent acts and were ***something more than simply failing to provide a safe work place and therefore constituted a breach of personal duty of care*** [owed] to Plaintiff.

19. ***The*** affirmative ***negligent acts of Defendant violated a duty more than just providing a safe work place and increased the risk of harm*** to Plaintiff.

(Emphasis added.)

Asmus filed a motion to dismiss the amended petition. Asmus again argued that he did not owe Leeper a personal duty of care to perform his job duties independent of the employer's nondelegable duty to provide a safe workplace. Specifically, Asmus argued that the amended petition failed to satisfy the "something more" test because it did not allege a purposeful, affirmative act directed at Leeper. The trial court dismissed the amended petition and gave Leeper thirty days in which to further plead. No further amendment was filed. The trial court entered its judgment dismissing Leeper's suit with prejudice.

Leeper appeals.[1]

**Standard of Review**

The trial court did not specify its reason for dismissing Leeper's amended petition. "When the circuit court does not provide reasons for dismissing a petition, we must presume the decision was based on the grounds stated in the motion to dismiss."

---

[1] Leeper filed a notice of appeal from the initial dismissal of the amended petition which was subsequently dismissed by this court upon Leeper's motion. Asmus then sought a final judgment of dismissal with prejudice from the trial court which was entered on August 14, 2013.

*Robinson*, 323 S.W.3d at 421 (Mo. App. W.D. 2010). Asmus's motion to dismiss argued that the amended petition did not establish the first essential element of a claim of negligence--the existence of a duty--because Leeper did not allege that Asmus committed a purposeful, affirmative act directed at Leeper. "Duty is unique among the elements of negligence because the existence of duty is a question of law to be decided by the court." *Hansen*, 375 S.W.3d at 208 (citation omitted).

We review the trial court's grant of Asmus's motion to dismiss *de novo*. *Id.* at 205 "'In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief.'" *Id.* (quoting *Stabler v. Stabler*, 326 S.W.3d 561, 564 (Mo. App. E.D.2010)). "'If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim.'" *Id.* (quoting *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008)).

**Analysis**

Leeper raises a single point on appeal. Leeper argues that the trial court erred in granting Asmus's motion to dismiss because the facts pled in the amended petition, taken as true and construed favorably to him, establish that Asmus breached a personal duty of care independent of his employer's nondelegable duties when Asmus negligently failed to perform a job duty in the safe manner in which he had been directed and rendered a safe workplace unsafe. In effect, Leeper argues that the common law duty owed by a co-employee in negligence does not align with the "something more" test. We agree.

7

*The Legislature's 2005 Amendment to Section 287.800 Restored the Common Law of Co-Employee Negligence*

The 2005 amendment to section 287.800 required the Act to be strictly construed.[2] In *Robinson*, we held that strict construction no longer permitted us to construe the Act to immunize co-employees by sweeping their conduct into the statutory definition of "employer."[3] *Robinson*, 323 S.W.3d at 423-25. The effect of strict construction of the Act was to remove co-employees, in most circumstances, from the protective reach of the Act's exclusivity provision.[4] *Id.* at 425.

Many misread *Robinson* as creating a carte blanche right to pursue claims of co-employee negligence for all workplace injuries. *Hansen* clarified that *Robinson* did not create an otherwise non-existent remedy against co-employees. *Hansen*, 375 S.W.2d at 207. Instead, *Robinson* held that the 2005 amendment of the Act restored the remedy against co-employees as it existed at common law. *Id.* *Hansen* addressed the common law remedy against co-employees and determined that:

> [A]t common law, a co-employee who has violated an *independent* duty to an injured employee will be "answerable to such person for the consequences of his negligence." . . . However, a co-employee's independent duties owed to fellow employees do not include the duty to perform the employer's nondelegable duties, as those duties necessarily derive from, and are not independent of, the master-servant relationship.

*Id.* at 213-14 (citation omitted) (emphasis in original). Thus, for workplace injuries subject to the 2005 amendment of the Act, injured employees could separately pursue a

---

[2]In 2005, section 287.800 of the Act was amended to provide that: "Administrative law judges, associate administrative law judges, legal advisors, the labor and industrial relations commission, the division of workers' compensation, and any reviewing court shall construe the provisions of this chapter strictly."
[3]Section 287.030.1 defines the term "employer."
[4]Section 287.120.1 is the exclusivity provision in the Act.

8

cause of action against negligent co-employees so long as the co-employee owed the injured employee a duty of care at common law. "[U]nder the common law, a co-employee's personal duties to fellow employees do not encompass a legal duty to perform the employer's nondelegable duties." *Carman v. Weiland*, 406 S.W.3d 70, 77 (Mo. App. E.D. 2013) (citing *Hansen*, 375 S.W.3d at 217).

*Hansen* did not "definitively determine the precise parameters of a co-employee's personal duties to a fellow employee sufficient to support an actionable claim of negligence." *Hansen*, 375 S.W.3d at 217. The plaintiff in *Hansen* did not allege independent duties owed by a co-employee, but instead pled that the co-employee was "assigned the duty to provide a safe workplace," and thus the duty to perform the employer's nondelegable duties. *Id*. at 206. Here, in stark contrast, Leeper has attempted in his amended petition to differentiate between a personal duty owed by Asmus and the employer's nondelegable duties. We must determine whether Leeper's allegations are sufficient to establish that Asmus owed an independent duty of care. "Unless a petition asserts a personal duty owed by a co-employee that exists independent of the employer's nondelegable duties, and thus a duty that would exist independent of the master-servant relationship, the petition will not survive a motion to dismiss for failure to state a cause of action for negligence." *Hansen*, 375 S.W.2d at 217.

### *At Common Law, it Must First be Determined Whether a Workplace Injury is Attributable to a Breach of The Employer's Nondelegable Duties, a Question of Fact*

At common law, employers could be sued in negligence for workplace injuries. Employers owed employees the general duty to exercise ordinary care to protect

9

employees from the foreseeable risks and perils of employment. *Kelso v. W. A. Ross Constr. Co.*, 85 S.W.2d 527, 534 (Mo. 1935) (observing that the employer's specific nondelegable duties arise from the general duty of an employer to use "the reasonable care of the average prudent person under similar circumstances"); *Moles v. Kansas City Stock Yards Co. of Maine*, 434 S.W.2d 752, 754 (Mo. App. 1968) (holding that at common law, "[a] duty rests upon the [employer] not to expose the [employee], in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care") (citation omitted). The employer's general duty of care was nondelegable, and manifested itself in several specific nondelegable duties:

1. The duty to provide a safe place to work.

2. The duty to provide safe appliances, tools and equipment for the work.

3. The duty to give warning of dangers of which the employee might reasonably be expected to remain ignorant.

4. The duty to provide a sufficient number of suitable fellow employees.

5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.

W. Prosser, LAW OF TORTS, section 80, p. 526 (4th ed. 1971); *see also Hansen*, 375 S.W.3d at 208-09; *Carman*, 406 S.W.3d at 76-77. Because the employer's general and specific duties of care are nondelegable, "the employer cannot escape its dut[ies] by delegating the task to another. When an employee fails to perform [one of] the employer's nondelegable duty, the failure rests with the employer, not the employee." *Carman*, 406 S.W.3d at 76-77. Thus, at common law, co-employees were not chargeable

10

in negligence for injuries attributable to the employer's breach of a nondelegable duty. *Kelso*, 85 S.W.2d at 534. The underpinning for this rule recognized that employees have no meaningful ability to control whether an employer's nondelegable duties will be performed. *Id.* (holding that the employer's nondelegable duties "often concern matters beyond the control of individual employees"); *see also, Stitt by Stitt v. Raytown Sports Ass'n, Inc.*, 961 S.W.2d 927, 930 (Mo. App. W.D. 1998) (holding that duty requires alleged tortfeasor to have "some right or obligation to control the activity which presents the danger of injury").

The employer's nondelegable duties are continuing in nature. *Bender v. Kroger Grocery & Baking Co.*, 276 S.W. 405, 408 (Mo. 1925). Thus, "[t]he [employer] [is] liable for the negligent performance of any act ***directed by it to be performed*** by any employee, whether of high or the most lowly degree, which affect[s] the safety of th[e] [work]place. The duty of exercising ordinary care to keep such [work]place reasonably safe [is] a continuing and nondelegable duty." *Id*. (emphasis added). Risks that are attendant to performing the employer's work ***as directed*** are thus necessarily subsumed within the employer's nondelegable duties, and cannot support an independent personal duty owed by a co-employee. *Kelso,* 85 S.W.2d at 534.

Though the employer's nondelegable duties are expansive and continuing in nature, they are not unlimited. At common law, "[e]mployers are not insurers of the safety of employees." *Graczak v. City of St. Louis*, 202 S.W.2d 775, 777 (Mo. 1947). *See also Moles*, 434 S.W.2d at 754 ("[A] master is not an insurer against injuries which a servant may incur in the discharge of his duties."). It follows that some workplace

11

injuries at common law could not be attributed to a breach of the employer's nondelegable duties, and were instead attributable to the fault of the injured employee or of a co-employee. To assign responsibility for a workplace injury at common law, the necessary starting point was to first determine whether the injury was caused by a breach of the employer's nondelegable duties.

In *Gimmarro v. Kansas City*, 116 S.W.2d 11 (Mo. 1937), our Supreme Court held that the employer breached its nondelegable duty to provide a reasonably safe place to work. 116 S.W.2d at 12-13. The employer should have known of the danger of requiring employees to work in trenches below excavated rock without the presence of barricades. *Id*. at 13. In other words, the employer negligently permitted a hazardous condition and an unsafe place to work. *Id*. Because the employer breached its nondelegable duties, the employer was liable in negligence when a foreman ordered the plaintiff to work in the dangerous location. *Id*.

In *Bender*, an employee ordered an employee to detach and move a tractor from the trailer it had been hauling, but failed to warn a third employee inside the trailer. 276 S.W. at 405-06. The employee who disconnected and moved the tractor failed to put down the trailer leg, causing the employee inside the trailer to be injured when the trailer tipped forward. *Id*. at 406. The court concluded that the order to detach and move the tractor from the trailer was attendant to performing the employer's work as directed, and that the resulting injury was thus attributable to the employer's nondelegable duty to see that its work as directed was not negligently performed. *Id*. at 407-08. The employer was liable in negligence, but the negligent employee was not.

12

The outcomes in *Gimmarro* and *Bender* are illustrative of the broad expanse of the employer's nondelegable duties. An employer must create a safe work environment, and must take precautions to protect against foreseeable risks and perils in the work environment, as in *Gimmarro*. And because the nondelegable duties are continuing, tasks necessarily attendant to the employer's work and performed at the employer's direction are normally chargeable to the employer's nondelegable duties if negligently performed, as in *Bender*.

However, because employers are not insurers against workplace injuries at common law, some workplace injuries cannot be attributed to a breach of the employer's nondelegable duties. In *Marshall v. Kansas City*, 296 S.W.2d 1, 2 (Mo. 1956), the Supreme Court set aside a verdict in favor of an employee premised on the theory that the employer negligently failed to furnish safe tools and a safe place to work. Plaintiff was injured when a co-employee, who had been directed to get and connect a hose to a compressor by a foreman, began shaking and pulling on the hose to remove kinks. *Id*. In the process, the plaintiff became entangled in the hose, and was tripped by the jerking movements of the hose. *Id*. The Supreme Court explained the difference between an employer's nondelegable duties and duties owed independently by a co-employee. The lengthy discussion is instructive:

> The employer, here the city, owes to its employees the nondelegable duty to furnish safe tools and appliances and a reasonably safe place to work and failing in these respects is subject to liability for injury resulting to its employees. There were kinks in the hose and it was necessary to get them out before attaching the hose to the jackhammer, but there is no evidence or claim by the appellant that the hose was defective; [Plaintiff's] injury came about by reason of [co-employee's] negligent use of the hose and not

13

because it was defective. Likewise the place of work was not unsafe and the hazard was not brought about by the manner in which the work was being done; the danger came about by reason of the manner in which [co-employee] handled the hose. . . . *[Co-employee's] suddenly and unexpectedly jerking the hose and tripping [Plaintiff] was not, of course, the exercise of due care on his part, but it does not support the inference or demonstrate negligence on the part of the city with respect to either the tools furnished, place of work or the manner in which the work was being done. In the particular circumstances it can only be said . . . that [Plaintiff's] injuries resulted from the negligent act of his fellow employee and not be reason of the breach of any nondelegable duty owed by the city*.

*Id*. at 3 (internal citations and quotations omitted) (emphasis added). The court contrasted its holdings in other cases, including *Gimmarro,* noting particularly that *Gimmarro* "is a typical illustration of injury and liability resulting from a hazardous condition and an unsafe place to work due to the method or manner in which work was being done." *Id*.

*Marshall's* emphasis on the fact that its holding was dependent upon the "particular circumstances" before it is significant. *Id.* Had the facts in *Marshall* supported the inference that the employer knew or should have known of its employee's careless conduct and failed to take measures to remediate the risk or peril, then a fact finder could have concluded that the workplace injury was the result of a breach of the employer's nondelegable duties. Or, had the co-employee in *Marshall* been directed by a supervisor to shake the hose to remove kinks, the workplace injury would have been attributable to the employer's non-delegable duties as the co-employee would have been performing his work as directed, albeit negligently. The salient point is that at common law, before assessing whether a co-employee owed an independent duty of care, it was

14

first required to determine whether the workplace injury was attributable to a breach of the employer's nondelegable duties, a question of fact.

The Supreme Court clearly articulated this point in *Kelso*:

Since negligence in a master and servant case depends upon the existence of a duty on the part of the master, ***the ultimate question to be first determined in every case is whether the master is guilty of a breach of duty to the servant who brings the action***.

85 S.W.2d at 534 (internal citations and quotations omitted) (emphasis added). In *Kelso*, an employee was injured by a truck while working on crushed rock piles. *Id.* at 533-34. The employer contended that it owed no duty to the employee, and that the employee's injuries were a result of his own negligence or the negligence of the co-employee truck driver for whom the employer was not liable. *Id.* at 534. The employee contended that his claims against the employer were based on the employer's "nondelegable duties with reference to the safety of the place and the method in which the work was done there." *Id.* The Supreme Court concluded that it was a proper question for the jury in that case whether "***the system of work adopted by the [employer] was an improper one***" and thus unsafe. *Id.* at 536 (emphasis added). In other words, it was for the jury to first determine whether the workplace injury could be attributed to the employer's breach of nondelegable duties, as resolution of that issue would control whether the co-employee could be liable in negligence.

The determination of an employer's breach of its non-delegable duties is a question of fact. *See Luallen v. Reid*, 58 S.W.3d 50, 53 (Mo. App. W.D. 2001) (holding that "where reasonable minds could infer negligence, determinations of breach of duty are

15

questions of fact for the finder of fact, not questions of law for this court").  The facts and circumstances unique to each workplace injury will thus bear on whether the workplace injury can be attributed to breach of the employer's nondelegable duties.  On this point, our Supreme Court's decision in *Kelso* is again instructive:

> The general standard of care, by which the duty of an employer is determined, is that required of every one in all relations with others; namely the reasonable care of the average prudent person under similar circumstances.  The more specific duties which arise from the general duty of an employer to use reasonable care are: To see that the place of work is reasonably safe; to see that suitable instrumentalities are provided; and to see that those instrumentalities are safely used. These nondelegable duties are duties of the employer to his employees and not of fellow servants to each other.  These duties are all closely related, and often concern matters beyond the control of individual employees. . . . [T]he place in which the work is done cannot always be separated from the instrumentalities with which the work is done and it is often difficult, if not impossible, to say with confidence which of these two conceptions is appropriate to the facts in evidence.  For example, a locomotive, which is clearly a piece of machinery so far as the engineer and fireman are concerned, is just as clearly something which makes the place of work unsafe as regards a trackman who is run down by it.  Thus, the manner in which instrumentalities are used may make a place safe or unsafe as a place of work, and, therefore, the duty to see that instrumentalities are safely used may become the most important element in the safety of a workman in his place of work. . . . A safe method of doing the work is something that the employer can provide to safeguard his employees from some risks of the shifting and changing of physical surroundings of the place of work, and the use of the required instrumentalities therein; and when it is necessary for their protection, in the exercise of reasonable care, it should be held to be a part of his duty to them and his failure to perform it is negligence.  In other words, the employer's duty is not merely safety of the place of work of his employee, but also his safety in his place of work; in short, a safe environment as well as a safe place.
>
> This duty is performed by providing a safe method of work, and it properly arises from circumstances where an employee cannot safely look out for himself because of the complexity of the operations under way.  One who employs servants in complex and dangerous business ought to prescribe rules sufficient for its orderly and safe management.  The chief

16

circumstance on which the duty to do this depends is that the business is an intricate and complex one in which different workmen or groups of workmen have distinct tasks, and one group in the performance of its tasks is liable to endanger the safety of some other groups engaged in different tasks.

The distinctive characteristic elements of the duty to see that instrumentalities are safely used are obviously: (1) General orders issued for the guidance of servants; (2) particular orders with reference to the details of the work during its progress.  As regards general orders, the master may be conceived to be subject to three obligations:  (1) To frame suitable rules and regulations (2) To bring those rules and regulations to the knowledge of the servants for whose benefit they are framed (3) To carry out those rules and regulations in such a manner that the objects for which they are framed may be attained. . . . *Except in cases in which the master is himself directing the work in hand*, *his obligation to protect his servants does not extend to protecting them from the transitory risks which are created by the negligence of the servants themselves in carrying out the details of that work. In other words, the rule that the master is bound to see that the environment in which a servant performs his duties is kept in a reasonably safe condition is not applicable where that environment becomes unsafe solely through the default of that servant himself, or of his fellow employees*. . . .

However, an obligation of the employer to warn employees of certain transitory dangers, under some circumstances does arise out of his duty to conduct the business on a safe system. . . . A master's duty does not end with prescribing rules calculated to secure the safety of employees.  It is equally binding on him honestly and faithfully to require their observance.

*Id*. at 534-36 (internal citations omitted) (emphasis added).  *See also*, *Gunnett v. Girardier Building and Realty Co.*, 70 S.W.3d 632, 639 (Mo. App. E.D. 2002) ("Once the facts and circumstances are known, whether this personal duty exists in any particular situation is a question of law, to be determined by the court.").

Thus, before a court can determine whether a co-employee owes a duty in negligence at common law (a question of law), it must first be determined whether the workplace injury is attributable to the employer's breach of a nondelegable duty, a

17

question of fact unique to the workplace, and influenced by, among other things: the nature of the employer's work; the risks and perils attendant to doing the employer's work as directed; whether the instrumentalities of the work are safe; whether a co-employee causing injury was acting as directed by the employer; whether the methods for performing the work are safe; the competency of the employees hired to perform the work; the training of employees; the rules and regulations of the workplace adopted by the employer to protect workers from the risks and perils of the work about which the employer should have known; the communication and enforcement of these rules and regulations; and other facts or circumstances which might tend to establish the existence of a risk or peril that, through the exercise of ordinary care, the employer could reasonably have acted to prevent. If, after considering all relevant facts and circumstances, an employee's workplace injury can be attributed to the employer's breach of a nondelegable duty, then a negligent co-employee owes no duty in negligence to the injured employee as a matter of law. Conversely, if an employee's workplace injury is not attributable to the employer's breach of a nondelegable duty, then a negligent co-employee may owe a legal duty to the injured employee.[5] In other words, the co-employee's negligent act or omission is independent of the master-servant relationship.

---

[5]If a workplace injury is not attributable to a breach of the employer's nondelegable duties, the existence of a duty of care owed by a co-employee cannot be automatically assumed, and remains subject to proof. "The question of whether a duty exists 'depends upon a calculus of policy considerations.' Among these considerations, '[f]oreseeability is the paramount factor in determining existence of a duty, but a relationship between the parties where one is acting for the benefit of another also plays a role.' As such, foreseeability alone is not enough to establish a duty. In this respect, there must also be some right or obligation to control the activity, which presents the danger of injury." *Stitt by Stitt v. Raytown Sports Ass'n, Inc.*, 961 S.W.2d 927, 930-31 (Mo. App. W.D. 1998) (internal citations omitted). *See also, Parra v. Builders Erection Services*, 982 S.W.2d 278, 283 (Mo. App. W.D. 1998) ("In considering whether a duty exists in a particular case, the court must weigh, *inter alia*, the foreseeability of the injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant.").

*Hansen*, 375 S.W.3d at 213. Plainly, the starting point is to ***first*** determine whether a workplace injury is attributable to a breach of the employer's nondelegable duties, a question of fact.

***The "Something More" Test Determines whether a Co-Employee owes an Actionable Duty of Care in Negligence Based on the Nature and Attributes of the Co-Employee's Conduct***

The Act became effective in 1927. *See Bethel v. Sunlight Janitor Service*, 551 S.W.2d 616, 618 (Mo. banc 1977). For years, employers or employees were permitted to opt out of the Act, allowing employers under some circumstances to defend workplace injury claims by asserting the affirmative defenses of contributory negligence, assumption of the risk, or the fellow servant doctrine.[6] Section 287.080 (RSMo 1949); *see* W. Prosser, LAW OF TORTS, section 80, pp. 526-27 (4th ed. 1971). Section 287.080 was repealed in 1978, negating for all intents and purposes the relevance of the employer's affirmative defenses. *Hansen*, 375 S.W.3d at 209 n.11. The effect was to create "a no-fault system of compensation for the employee" from an employer which rendered the subject of an ***employer's*** common law liability in negligence moot. *Gunnett*, 70 S.W.3d at 636.

---

[6]*See Gunnett v. Girardier Building and Realty Co.*, 70 S.W.3d 632, 635 (Mo. App. E.D. 2002). These affirmative defenses acted to exempt an employer who would otherwise be liable to an employee injured by another co-employee under the doctrine of *respondeat superior. Id.* However, the affirmative defenses offered no solace to the employer if the workplace injury was independently attributable to the employer's breach of its non-delegable duties. *See, e.g.*, *Bender v. Kroger Grocery & Baking Co.*, 276 S.W. 405, 407-08 (Mo. 1925); *Thomas v. Am. Sash & Door Co.*, 14 S.W.2d 1, 3 (Mo. banc 1929). "[T]he fellow servant rule may be stated to absolve an employer from liability to an employee for injuries occasioned by the negligence, as distinguished from the incompetence, of another employee . . . except in those instances wherein the negligence relates to some nondelegable duty of the employer." *Graczak v. City of St. Louis*, 202 S.W.2d 775, 777 (Mo. 1947). *Graczak* distinguished "incompetence" from negligence because hiring "incompetent" employees plainly falls within the employer's non-delegable duties. *Hansen*, 375 S.W.3d at 208-09.

19

However, the Act did not prohibit injured employees from pursuing common-law actions against negligent third-parties, ***including co-employees***. *Schumacher v. Leslie*, 232 S.W.2d 913, 916 (Mo. banc 1950) (holding Act does not negate right to pursue claims against negligent third parties, including co-employees, for injuries in the workplace); *Sylcox v. National Lead Co.*, 38 S.W.2d 497, 502 (Mo. App. 1931) (holding that a co-employee is a "third party" under the Act amendable to actions at common law). The retained right to pursue third party claims intensified attention on the prospect of recovery from a negligent co-employee in addition to no-fault recovery from the employer under the Act.[7]

It was in this environment that the "something more" test was announced in *Badami*, 630 S.W.2d at 179-80. *Badami* held that "for an injured employee to charge a co-employee with actionable negligence, 'something more' than breach of one of the employer's [nondelegable] duties must be pled." *Hansen,* 375 S.W.3d at 214 (citing *Badami*, 630 S.W.2d at 180). In effect, *Badami* construed the Act to immunize all co-employee conduct except conduct beyond the scope of the employer's non-delegable duties. Thus, the "something more" test as ***originally*** announced in *Badami* was indistinguishable from the common law--with one exception. *Badami's* characterization of a co-employee's actionable negligence as "something more" focused attention on the nature and attributes of the co-employee's conduct, noting that "[t]he extent and nature ***of the additional charge*** can only be determined and sorted out on a case-by-case basis."

---

[7]This often double-exposed employers for a workplace injury, as the nature of a co-employee's negligence often obliged an employer, practically or legally, to provide a defense or indemnity to the co-employee.

20

*Badami*, 630 S.W.2d at 180-81 (emphasis added). In contrast, the common law focused attention on the employer's conduct, first requiring it to be determined whether a workplace injury was attributable to a breach of the employer's nondelegable duties. Post-*Badami* refinements of the "something more" test attached legal significance to this difference in focus.

For example, in *Craft v. Scaman*, 715 S.W.2d 531, 537 (Mo. App. E.D. 1986), the Eastern District observed that the "something more" test required an ***affirmative*** act outside the scope of the employer's responsibility before a co-employee could owe a personal duty of care to a fellow employee. (Emphasis added.) In *Tauchert v. Boatmen's Nat. Bank of St. Louis*, 849 S.W.2d 573, 574 (Mo. banc 1993), the Supreme Court observed that the "creation of a hazardous condition is not merely a breach of an employer's duty to provide a safe place to work" but an "***affirmative*** negligent act outside the scope of . . . responsibility to provide a safe workplace." (Emphasis added.) *See also*, *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 672 (Mo. banc 1993), (holding that "an employee may sue a fellow employee for ***affirmative*** negligent acts outside the scope of an employer's responsibility to provide a safe workplace") (emphasis added); *Gunnett*, 70 S.W.3d at 641, (holding that a "personal duty will arise out of circumstances where the co-employee engages in an ***affirmative*** act, outside the scope of employer's nondelegable duties, ***directed at a worker***, ***increasing the risk of injury***") (emphasis added).

21

In *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 622 (Mo. banc 2002),[8] the Supreme Court heightened the "something more" standard, requiring "***purposeful, affirmatively dangerous conduct***" to move a fellow employee outside the scope of an employer's responsibility to provide a safe workplace. (Emphasis added.) In *Garza v. Valley Crest Landscape Maintenance, Inc.*, 224 S.W.3d 61, 63 (Mo. App. E.D. 2007), the Eastern District observed that *Taylor* superseded all earlier "something more" cases by holding that "mere allegations of negligence" are insufficient to establish "something more." (citing *Taylor*, 73 S.W.3d at 621-22). In *Nowlin ex rel. Carter v. Nichols*, 163 S.W.3d 575, 580 (Mo. App. W.D. 2005) (*abrogated on other grounds by Burns v. Smith*, 214 S.W.3d 335, 338-39 (Mo. banc 2007)), we held that a co-employee's conduct was not "something more" because he ***acted within the scope of his employment*** and "***did not engage in inherently dangerous conduct purposefully directed*** at" his fellow employee. (Emphasis added.) In *Burns*, 214 S.W.3d at 338 the Supreme Court held that "the notion of an affirmatively negligent act--the 'something more'--can best be described as an ***affirmative act that creates additional danger beyond that normally faced in the job-specific environment***." (Emphasis added.)

The post-*Badami* refinements of the "something more" test operated to immunize co-employees from liability for ordinary negligence by narrowing recovery outside the exclusivity of the Act to outrageous or reckless conduct directed at a particular employee. *See, e.g., Burns*, 214 S.W.3d at 338 ("[T]he notion of an 'affirmative negligent act'

---

[8]*Overruled on other grounds by McCracken v. Wal-mart Stores East, LP*, 298 S.W.3d 473 (Mo. banc 2009).

22

certainly includes the commission of an intentional tort. . . ."); *Nowlin*, 163 S.W.3d at 580

(holding that "[a]n affirmative negligent act is ***not synonymous with any negligent act***,

as the law requires a purposeful act 'directed' at a co-employee") (emphasis added). Post-

*Badami* courts strived to define "bright lines" within which recovery from a co-employee

for negligence would be precluded as a matter of law based solely on the nature and

attributes of the co-employee's conduct. Though not precisely stated in such terms, the

"something more" test gravitated toward immunization of co-employees if their conduct

loosely fell within the scope and course of their job duties. *See, e.g., Nowlin*, 163 S.W.3d

at 579 (holding that act of leaving bulldozer running was not "something more" because

"use of the bulldozer was within the usual scope of [co-employee's] employment").

The post-*Badami* refinements of the "something more" test were fashioned at a

time when section 287.800 required our courts to liberally construe the Act "with a view

to the public welfare."[9] Given this legislative directive, it is understandable that the

"something more" test evolved to reduce the circumstances where both the employer and

a co-employee could face liability for a workplace injury. However, as noted, section

287.800 was amended in 2005[10] to require "strict" in lieu of "liberal" construction of the

Act. The judicial construct of "something more," which evolved over time to sweep most

co-employee conduct into the exclusivity of the Act, was abrogated, restoring co-

---

[9]Prior to its amendment in 2005, section 287.800 directed that "[a]ll provisions of [the Act] shall be liberally construed with a view to the public welfare, and a substantial compliance therewith shall be sufficient to give effect to rules, regulations, requirements, awards, orders, or decisions of the division and the commission . . . ." Section 287.800 (RSMo 2000).

[10]*See* footnote number 2.

employee negligence claims *as existed at common law*.  *Robinson*, 323 S.W.3d at 424-25.

### *The Refined "Something More" Test does not Align with the Common Law of Co-Employee Negligence*

We observed in *Hansen* that because the "something more" test as **originally** announced in *Badami* "did nothing more than restate the common law" of co-employee liability, the test was not necessarily rendered obsolete by the 2005 amendment of the Act.  375 S.W.3d at 215.  Though technically accurate, our observation did not resolve whether the post-*Badami* refinements to the "something more" test continued to align with the common law.  Our discussion herein plainly reveals they do not.

The "something more" requirement that a co-employee *only* and *always* owes an actionable duty in negligence if the co-employee commits a "purposeful, affirmative act directed at a fellow employee" has no common law origin.  In fact, *Taylor* held as much, as it held "mere allegations of negligence" are insufficient to establish "something more."  73 S.W.3d at 621-22.  Moreover, the "something more" requirement of an "affirmative" act is inconsistent with the common law and harkens back to efforts to distinguish between misfeasance and nonfeasance (acts and omissions)--an unwieldy lens for establishing whether a duty is owed that was abandoned by our Supreme Court for common law negligence claims.  *Lambert v. Jones*, 98 S.W.2d 752, 757 (1936) (holding that determining whether a duty is owed based on whether a co-employee's conduct constitutes misfeasance or nonfeasance is "a fictitious distinction, which can only result in confusion," as acts of omission or commission can fall into either category).  In short,

24

the "something more" test's focus on the nature and attributes of a co-employee's conduct without first determining whether a workplace injury is attributable to a breach of an employer's nondelegable duties can impose an independent duty on a co-employee when the common law would not, and may fail to impose an independent duty on a co-employee when the common law would. We offer several examples.

In *Gimmarro*, the foreman purposefully and affirmatively directed an employee to work in an area that was not protected by barriers from falling rock. 116 S.W.2d at 12-13. Yet our Supreme Court found only the employer to be responsible in negligence because the employer failed to insure that the workplace and work methods were safe. *Id*. The foreman's purposeful, affirmative order directing an employee to work in a dangerous area was attributable to the employer's breach of its nondelegable duties, and did not give rise to a personal duty of care owed by the foreman. In *Marshall*, a co-employee carelessly shook a compressor hose to remove kinks, unwittingly causing a fellow employee to trip over the hose. 296 S.W.2d at 2. Though the co-employee's acts were affirmative in nature, there was no indication that the acts were purposefully directed at the injured fellow employee. Yet, the employee was held to have breached a personal duty of care independent of the employer's nondelegable duties. Both of these cases, decided at common law, would likely have been decided differently under the "something more" test.

In *Logsdon v. Duncan*, 293 S.W.2d 944, 949-50 (Mo. 1956), our Supreme Court held that a co-employee who threw a brick off of a house in connection with construction activities without regard for, or warning to, co-workers below owed a common law duty

25

of care, an outcome that necessarily presupposed that the workplace injury was not chargeable to a breach of the employer's nondelegable duties. In contrast, and under nearly identical facts, the Eastern District in *Quinn v. Clayton Construction Co., Inc.*, 111 S.W.3d 428, 433-34 (Mo. App. E.D. 2003) affirmed the dismissal of a petition alleging co-employee negligence where a co-employee carelessly threw a piece of iron from the roof of a construction site without regard for, or warning to, co-employees below because the conduct was "not an allegation of 'something more,'" as there was no allegation of "an affirmative act directed at [injured employee] that increased the risk of injury."

In *Graczak*, 202 S.W.2d at 776, an employee was injured when his hand was smashed by a hydraulic hammer being operated by a fellow employee. Under the facts and circumstances before it, the court concluded that:

> [T]he competency and method of work by [co-employee] is not questioned. . . . The steam hammer was in proper condition. Plaintiff's injury was not the result of any fault of plan, or construction, or defect, or lack of repair, or want of safety in defendant's place of work or the machinery used therefor, or in the manner ordinarily used. Plaintiff's injury is attributable to . . . the negligence of a competent fellow employee in an operative detail of the work they were engaged in at the time.

*Id*. at 780. As such, the employer's nondelegable duties were not breached, and any actionable duty was owed by the co-employee, notwithstanding that the co-employee was merely negligent.

In *Groh v. Kohler*, 148 S.W.3d 11, 16 (Mo. App. W.D. 2004) (*abrogated on other grounds by Burns*, 214 S.W.3d at 338-39), we applied the "something more" test and held that a petition asserting co-employee negligence should not have been dismissed when a supervisor directed an employee to use a machine "regardless of the machine's known

26

dangerous spontaneous operation." We characterized the co-employee's conduct as "something more." *Id*. Yet, the machine in question was "defective," and "inherently dangerous." *Id*. Charging a co-employee with the personal duty to protect a fellow employee from the risk of operating a dangerous instrumentality of work violates a core maxim by ascribing to the employee the responsibility of performing the employer's nondelegable duties. Barring facts that might have indicated, for example, that the employer had taken all reasonable steps to remove the equipment from service or to order the equipment not to be used, the outcome in *Groh* is difficult to reconcile with the common law. *Kelso*, 85 S.W.2d at 534-36.

Our courts have acknowledged that the common law and the refined "something more" test are not aligned. In *Workman v. Vader*, 854 S.W.2d 560, 561 (Mo. App. S.D. 1993), a co-employee carelessly discarded cardboard and packing material behind a counter, and a fellow employee later slipped and fell on the cardboard. The Southern District concluded that the act of throwing the cardboard on the floor did "not involve a general nondelegable duty of the employer," but instead the co-employee's common law duty to exercise reasonable care. *Id*. at 564. In *Gunnett*, 70 S.W.3d at 638-640, the Eastern District explored several "something more" cases, and acknowledged that the imposition of a common law duty in *Workman* could not be reconciled with the "something more" test because the co-employee's conduct in *Workman* was not purposeful, affirmative conduct directed at another employee. *Id*. at 640, n.9.

We need not ascertain whether the outcomes reached in every "something more" case would be different had the common law been applied. For our purposes, it only

27

matters that a different result can be, and in some cases has been, reached. The refined "something more" test can impose on a co-employee a duty in negligence when no duty would have been imposed at common law, and can fail to impose a duty when a duty would have been imposed at common law.

We are thus required to conclude that for workplace injuries occurring between the effective dates of the 2005 and 2012 amendments of the Act, the common law, and not the refined "something more" test, must be applied to determine whether a co-employee owes a duty of care in negligence.[11] For workplace injuries within that time frame, it must first be determined whether a workplace injury is attributable to a breach of the employer's nondelegable duties. If yes, then a co-employee's negligent act or omission will not support a personal duty of care in negligence as a matter of law, regardless whether the act or omission can be characterized as "something more."[12] If no, then a co-employee's negligent act or omission may support an actionable duty of care in negligence,[13] regardless whether the act or omission can be characterized as "something more." Determining whether a workplace injury is attributable to a breach of the

---

[11]The relevant amendment to section 287.120.1 of the Act in 2012 is addressed, *supra*. In 2012, the legislature extended exclusivity to co-employees except for "affirmative negligent acts that purposefully and dangerously caused or increased the risk of injury." We express no opinion about the extent to which the post-*Badami* refined "something more" test will be relevant to construing this new statutory standard. We do observe that there is a strong trend toward co-employee immunity, and that by "1998, only Arkansas, Missouri, Maryland and Vermont permitted such suits." *Gunnett*, 70 S.W.3d at 637 n.6; 6 A. Larson, Workers' Compensation Law, section 72.11 (1998). However, the extent to which co-employees are afforded immunity by the Act is "more properly a function of the legislature." *Quinn v. Clayton Const. Co., Inc*. 111 S.W.3d 428, 434 n.5 (Mo. App. E.D. 2003).

[12]Our discussion regarding the common law of co-employee negligence applies only to remedies in negligence. The common law for determining whether a co-employee owes a duty of care in negligence based on whether the employer has breached non-delegable duties has never been applied, based on our research, to constrain a cause of action against a co-employee sounding in intentional tort.

[13]*See* footnote number 5.

28

employer's nondelegable duties is a question of fact. *Kelso*, 85 S.W.2d at 534-36; *Luallen*, 58 S.W.3d at 53.

In light of this conclusion, we decline to follow two Eastern District decisions which addressed workplace injuries subject to the 2005 amendment of the Act. Both cases relied on the refined "something more" test to determine whether a co-employee owed a duty in negligence. In *Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293, 303 (Mo. App. E.D. 2013), the Eastern District affirmed the grant of a motion to dismiss a petition asserting a claim of co-employee negligence. The court held that "[i]n order for an employee to become personally liable to a co-employee for injuries suffered in the scope and course of employment, the employee must have done *'something more' beyond performing or failing to perform normal job duties*[.]" (emphasis added). The principle that the performance or failure to perform a job duty will *never* support a duty of care independent of the employer's nondelegable duties has no support at common law. Nearly every co-employee negligence case will involve the co-employee's performance, or failure to perform, a job duty. Applied literally, *Amesquita* will abrogate co-employee negligence at common law by requiring a co-employee to act outrageously, recklessly, or intentionally--and thus in a manner that is effectively outside the scope and course of his duties. The inquiry in *Amesquita* should have been whether the co-employee's performance of, or failure to perform, a job duty was attributable to the employer's failure to perform one or more of its nondelegable duties. *See Kelso*, 85 S.W.2d at 534-36. This would have required an assessment of whether the manner in which the employee performed or failed to perform his job duty was an ordinary risk or

29

peril of the employer's work as to which the employer had the continuing duty to exercise ordinary care to prevent. *Kelso*, 85 S.W.2d at 534-35. Had the common law standard been applied, the same result may ultimately have been reached in *Amesquita*. We decline to follow *Amesquita*, however, not because we can discern that it reached the wrong result, but because it reached the result it did by employing an erroneous standard.

Similarly, we decline to follow *Carman*, where the Eastern District held that the trial court erred in failing to grant summary judgment in favor of a co-employee in a co-employee negligence case. 406 S.W.3d at 79. The court held as a matter of law that:

> [A] co-employee *owes* to a fellow employee *no common-law duty to exercise ordinary care and safety requiring the co-employee to refrain from operating a vehicle in a negligent manner* when driving in the course of his work. *As a matter of law, that responsibility is subsumed within an employer's nondelegable duty to provide a safe working environment*.

*Id*. (emphasis added). The absolute nature of this holding abrogates co-employee negligence in *all* motor vehicle cases, (and arguably in all cases involving the operation of any instrumentality of the employer's work). At common law, it is possible that a co-employee's operation of a motor vehicle (or other instrumentality of the work) will support a personal duty of care independent of the employer's nondelegable duties. *See, e.g.*, *Marshall*, 296 S.W.2d at 2. The existence of an independent co-employee duty depends on whether the co-employee's negligent operation is somehow attributable to a breach of the employer's nondelegable duties, a question of fact. *Kelso*, 85 S.W.2d at 534-36. The question is whether "the [employer] . . . expose[d] the [employee], in the discharge of his duty, to perils and dangers against which the master [could have] guard[ed] by the exercise of reasonable care." *Moles*, 434 S.W.2d at 754. *See also*,

30

*Kelso*, 85 S.W.2d at 536 (requiring determination of whether "the system of work adopted by the [employer] was an improper one" and thus unsafe). As discussed, *supra*, this assessment requires consideration of numerous relevant facts and circumstances unique to each case.[14] Though the ultimate result in *Carman* might have been the same had the proper lens for determining co-employee duty been employed, our declination to follow *Carman* is not a function of its result, but is instead a function of the standard used to determine co-employee duty.

### *The Sufficiency of the Allegations in Leeper's Amended Petition at Common Law*

Applying the common law, we turn to Leeper's amended petition. Leeper alleges that it was Asmus's job duty to "ensure that the cable is tight as the 500-pound pipe is lifted, otherwise the 500-pound pipe will become unsecure and fail." Leeper alleges that Asmus was "personally negligent in operating the drilling rig in that he violated his job duty . . . by lifting the 500-pound pipe without ensuring that the cable was tight." Leeper alleges that Asmus "was independently negligent . . . in that he violated his job duty in operating the drilling rig winch by lifting the 500-pound pipe without ensuring that the cable was tight." Leeper alleges that "[a] 500-pound pipe falling from a Schramm drilling rig is not a normal risk of operating and working on a Schramm drilling rig and as a result, [Leeper] was subjected to a risk which was something more than the normal risk of operating and working on a Schramm drilling rig."

---

[14]*See, e.g., Kelso*, 85 S.W.2d at 535 ("The distinctive characteristic elements of the duty to see that instrumentalities are safely used are obviously: (1) General orders issued for the guidance of servants; (2) particular orders with reference to the details of the work during its progress. As regards general orders, the master may be conceived to be subject to three obligations: (1) To frame suitable rules and regulations (2) To bring those rules and regulations to the knowledge of the servants for whose benefit they are framed (3) To carry out those rules and regulations in such a manner that the objects for which they are framed may be attained.").

31

These facts, taken as true, establish a duty owed by Asmus to Leeper independent of the employer's nondelegable duties. The amended petition alleges that Asmus failed to perform his job as he had been instructed, and that as a result he made what was otherwise a safe workplace and safe instrumentality of work unsafe.[15] Construed favorably to Leeper, these allegations support a conclusion that a safe drilling rig, safe methods for operation of the drilling rig, and a sufficiently trained operator of the drilling rig, were only made unsafe because Asmus failed to follow specific instructions imposed to insure safe operation of the drilling rig.

It will remain Leeper's obligation to prove that the employer performed all of its nondelegable duties such that a reasonably safe workplace, a safe instrumentality of work, and safe methods of work, became unsafe solely through the fault of Asmus,[16] a determination that depends on the facts and circumstances of the workplace injury. Though it may be difficult in most cases to establish that a workplace injury is not attributable to breach of an employer's nondelegable duties, given the inherently factual nature of that determination, dismissal of a petition for failure to state a claim will be premature if the petition alleges facts which would support that conclusion.

---

[15]Though the factual allegations in the amended petition are sufficient to overcome a motion to dismiss, the allegations understandably attempted to comport with the refined "something more" test, and thus are not model allegations for establishing the existence of an actionable co-employee duty at common law, in light of our conclusion that the "something more" test does not align with the common law of co-employee negligence.

[16]"Solely" refers to responsibility as between the employer and the co-employee. If a workplace injury is attributable in any manner to the employer's breach of its non-delegable duties, then a co-employee can owe no duty of care in negligence and the co-employee's negligence is chargeable to the employer. Conversely, if a workplace injury is in no way attributable to the employer's breach of its non-delegable duties, then a co-employee may owe a duty of care in negligence. The reference to "solely" clarifies that an employer and a co-employee cannot be jointly and severally liable in negligence for a workplace injury.

32

Leeper's amended petition alleges sufficient facts to establish an independent duty of care owed by a co-employee at common law. The trial court erred in dismissing the amended petition with prejudice for failure to state a claim.

Point is granted.

## Conclusion

The trial court's judgment is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

_Cynthia L. Martin_
_____
Cynthia L. Martin, Judge

All concur