

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | |
|---|---|
| LINDA MANTIA, | ) No. ED103016 |
| | ) |
| Respondent, | ) Appeal from the Labor and Industrial |
| | ) Relations Commission |
| vs. | ) |
| | ) Case No. 08-096413 |
| MISSOURI DEPARTMENT OF | ) |
| TRANSPORTATION, | ) |
| | ) |
| Employer/Appellant, | ) |
| | ) |
| and | ) |
| | ) |
| TREASURER OF MISSOURI AS | ) |
| CUSTODIAN OF THE SECOND | ) |
| INJURY FUND, | ) |
| | ) |
| Additional Party/Respondent. | ) Filed: June 14, 2016 |

### OPINION

The Missouri Department of Transportation ("MoDOT") appeals the Labor and Industrial Relations Commission's ("the Commission") decision that awarded Linda Mantia workers' compensation benefits representing fifty-percent permanent partial disability of the whole body and the right to future medical care for her work-related mental injury. MoDOT argues that the Commission misapplied the law and that its award was not supported by sufficient competent and substantial evidence. We disagree and affirm.

## Factual and Procedural Background

Mantia worked for MoDOT for over 20 years. Mantia's duties included providing traffic control and assistance at motor vehicle accident scenes on Missouri highways. Early in her career, Mantia's duties took her to accident scenes as often as four times per week. Later, Mantia and her crew were assigned to respond only to the most serious accidents which often included fatalities. Over the years, Mantia witnessed the aftermath of a multitude of serious accidents involving catastrophic injury, dismemberment, and death. Mantia worked approximately 1,000 accident scenes during her career with MoDOT, and by 2008 had begun to suffer significant emotional and psychological symptoms.

In October 2008, Mantia filed a claim for workers' compensation benefits for the mental injuries and disability she alleged arose out of her work for MoDOT. At the July 2014 hearing before an administrative law judge, Mantia and MoDOT each advanced medical expert testimony. MoDOT's expert, Wayne Stillings, M.D., concluded that Mantia suffered depressive disorder the prevailing cause of which was her employment with MoDOT. Dr. Stillings further opined that Mantia's work-related depressive disorder had resulted in permanent partial disability.

For his part, Mantia's medical expert, Timothy Jovick, M.D., agreed with Dr. Stillings that Mantia had suffered work-related depression, and concluded further that Mantia's condition represented *major* depressive disorder. Dr. Jovick also opined that Mantia suffered from post-traumatic stress disorder caused by her work for MoDOT. Although the two experts gave widely divergent disability ratings—2.5% on the part of Dr. Stillings and between 90 and 95% on the part of Dr. Jovick—both agreed that Mantia suffered permanent partial disability and that the prevailing cause of her disability was her horrific experiences at accident scenes for MoDOT.

2

Nevertheless, the administrative law judge denied Mantia's claim for compensation for her mental injuries because Mantia failed to prove that she suffered extraordinary and unusual work-related stress when compared to similarly-situated employees. The Commission, however, reversed, holding that as a result of the 2005 amendments to the Workers' Compensation statute, Mantia was no longer required to prove the extraordinary and unusual nature of her work-related stress by comparing the stress she endured with that experienced by similarly-situated employees. The Commission awarded Mantia benefits based on 50% permanent partial disability as a result of her mental injury and also ordered MoDOT to pay for any future medical care necessary to treat Mantia's mental injury. MoDOT appeals, asserting that the Commission's decision misapplied the law and should be reversed because even under the 2005 amendments, Mantia's burden was to prove that her work-related stress was extraordinary and unusual as compared to that encountered by similarly-situated employees.

### Standard of Review

We review the Commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record." MO. CONST. art. V, section 18. We must affirm the Commission's award unless (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) the record lacks sufficient competent evidence to support the award. *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo.banc 2012) (citing section 287.495.1[1]).

In the absence of fraud, the Commission's findings of fact shall be conclusive and binding. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo.banc 2015) (citing section

---

[1] All statutory references are to RSMo (Supp. 2012) unless otherwise indicated.

287.495.1). We defer to the Commission's determinations with regard to witness credibility and the weight accorded to conflicting evidence. *Id.* However, we review questions of law *de novo*, *id.*, and where, as here, the relevant facts are not disputed, the issue of whether an injury arose out of and in the course of employment becomes a question of law. *Johme*, 366 S.W.3d at 509. Thus, in addressing MoDOT's Point I, we review *de novo* whether there was sufficient competent and substantial evidence on the whole record to support the Commission's determination that Mantia suffered an occupational disease—here, a mental injury that "arose out of and in the course of her employment."

### Point I: Occupational Disease Arising from Mental Injury

The issue presented here is whether the 2005 amendments to the Missouri Workers' Compensation statute preclude us from following this Court's holding in *Williams v. Depaul Health Ctr.*, 996 S.W.2d 619 (Mo.App.E.D. 1999), that to prove a work-related stress claim, a claimant must present evidence of the work-related stress encountered by *similarly-situated employees* and prove that the work-related stress suffered by the claimant was extraordinary and unusual *specifically as compared to that encountered by those employees*.[2] To resolve this issue, we must determine the effect of the 2005 amendments on particular provisions—most importantly, section 287.120.8—of the Workers' Compensation statute.

The Commission and Missouri courts have repeatedly held—and neither party here disputes—that mental injuries fall within the category of "occupational disease." *See, e.g.*,

---

[2] *Williams* was decided prior to the Missouri Legislature's 2005 amendments to the Workers' Compensation statute, and no Missouri court has addressed whether *Williams*'s similarly-situated employee requirement applies under the amended statute. We are mindful that in 2009, in *Schaffer v. Litton Interconnect Technology*, 274 S.W.3d 597, 602-06 (Mo.App.2009), the Court applied the similarly-situated employee requirement; however, the 2005 amendments did *not* apply in that case because the employee's injuries and claim for compensation predated the passage of the amendments by over two years. *Id.* at 599.

4

*George v. City of St. Louis*, 162 S.W.3d 26, 32 (Mo.App.E.D. 2005) (considering depression and post-traumatic stress disorder to be "occupational diseases"). Section 287.067 defines an "occupational disease" as "an identifiable disease arising with or without human fault *out of and in the course of the employment*." (emphasis added). Section 287.120.8 establishes the criteria used to determine whether a mental injury resulting from work-related stress "arose out of and in the course of the employment." Specifically, section 287.120.8 provides that "[m]ental injury resulting from work-related stress does not arise out of and in the course of the employment unless it is demonstrated that the stress was work related and was extraordinary and unusual. The amount of work stress shall be measured by objective standards and actual events."

MoDOT contends that pursuant to section 287.120.8 and *Williams*, Mantia was still required to present evidence of the work stress encountered by similarly-situated employees in order to demonstrate that her stress was extraordinary and unusual as compared to theirs. Accordingly, MoDOT's argument concludes that because the Commission neither required Mantia to present such evidence nor found that her work-related stress was extraordinary and unusual *as compared to that experienced by other employees*, its finding that Mantia suffered a compensable occupational disease resulting from work-related stress misapplied the law and was not supported by sufficient competent and substantial evidence. We disagree.

In light of the 2005 amendments and the horrific and uncontested evidence of Mantia's work-related stress, we cannot convict the Commission of error in awarding Mantia workers' compensation benefits on her claim of occupational disease.

<u>The Effect of the 2005 Amendments</u>

*The Switch from Liberal to Strict Construction*

Prior to the 2005 amendments to the Workers' Compensation statute, section 287.800 required the statute to be construed "liberally . . . with a view to the public welfare." § 287.800 (RSMo 2000). Pursuant to section 287.800's liberal construction mandate, over the years several provisions of the Workers' Compensation statute received interpretations by Missouri courts that were not spelled out literally in the plain language of the statute.

For example, the Missouri Supreme Court held in *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 179 (Mo.banc 1982), that the Workers' Compensation statute's grant to "employers" of immunity from civil claims extended to co-employees for their negligence in performing a non-delegable duty of the employer, even though no reference to "co-employees" or their immunity appeared in the applicable section of the statute. This was a court-created principle fully sanctioned by the statutory interpretation mandate of section 287.800.

Likewise, in *Woodburn v. May Distrib. Co.*, 815 S.W.2d 477, 480 (Mo.App.S.D. 1991), the court ruled that based on the liberal construction mandate, it had jurisdiction to consider an appeal by the employer from a temporary award of the Commission when the employer disputed all liability, even though there is *no* provision in the statute that provides for an appeal from a temporary or partial—as opposed to a final—award of the Commission.

But in 2005, section 287.800 was amended to require that all provisions of the Workers' Compensation statute be construed strictly. Strict construction means that the statute can be given no broader an application than is warranted by its plain and unambiguous terms. *Pennewell v. Hannibal Reg'l Hosp.*, 390 S.W.3d 919, 923 (Mo.App.E.D. 2013) (citing *State ex rel. KCP & L of Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 20 (Mo.App.W.D. 2011)). The strict construction of a statute presumes nothing that is not expressed. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo.banc 2014).

6

As a result of the switch to strict construction, Missouri courts have in various cases held that particular provisions of the Workers' Compensation statute must be applied differently than they were before, or that particular judicially-created doctrines must be abandoned. For example, even though the employer's immunity under section 287.120 from civil claims had previously—in *Badami*, discussed above—been extended to co-employees, in *Robinson v. Hooker*, 323 S.W.3d 418, 423-24 (Mo.App.W.D. 2010), *superseded by statute*, RSMo § 287.120.1 (Supp. 2012), *as recognized in Leeper v. Asmus*, 440 S.W.3d 478, 480 (Mo.App.W.D. 2014), the court determined that, strictly construed, section 287.120's grant to "employers" of immunity from civil claims *no longer extended* to co-employees. The court reasoned that "[e]ven though the language of the *exclusivity provision* was not amended in 2005, the scope of employer immunity was narrowed by the new lens of strict construction." *Hooker*, 323 S.W.3d at 424 (emphasis added).

And with respect to the *Woodburn* decision noted above that extended appellate jurisdiction to the review of temporary awards, in *Smalley v. Landmark Erectors*, 291 S.W.3d 737, 738-39 (Mo.App.E.D. 2009), this Court recognized that *Woodburn* had been overruled by the holding in *Norman v. Phelps Cty. Reg'l Med. Ctr.*, 256 S.W.3d 202, 205 (Mo.App.S.D. 2008) based on the reasoning that solely as a result of the amended section 287.800's switch from liberal to strict construction of the Workers' Compensation statute, "the judicially created exceptions allowing for appellate review of temporary or partial awards no longer apply." *Smalley*, 291 S.W.3d at 738.

Finally, in *Ash v. Millennium Restoration & Const.*, 408 S.W.3d 257, 258-61 (Mo.App.S.D. 2013), the court found that even though section 287.240 was not amended in 2005, in light of the new strict construction requirement, the statute must be interpreted to

7

require a worker's spouse's remarriage benefit to be calculated using his or her entire death benefit—not just the portion allocated to the spouse. The court reached this conclusion and upheld the trial court's award of greater compensation to the spouse even though under a liberal construction of section 287.240, courts had consistently calculated the remarriage benefit based solely on the amount of the benefit allocated to the surviving spouse. *Id.* at 260-61.

Clearly, the switch to strict construction directly impacted the court-created extensions of the particular Workers' Compensation statute provisions at issue in *Hooker*, *Norman*, and *Ash*, and we observe a similar effect in this case. Here, as in that trio of cases and others, even though the provision of the Workers' Compensation statute to be applied—in this case, section 287.120.8—was not amended in 2005 or at any time thereafter to date, its application has changed as a result of the switch in section 287.800 from liberal to strict construction.

Prior to the amendments, in *Williams* this Court liberally construed section 287.120.8 to require a claimant bringing a work-related stress occupational disease claim to prove the extraordinary and unusual nature of the stress by presenting evidence of the work-related stresses encountered by similarly-situated employees to show that in comparison to the stress encountered by those employees, claimant's stress was extraordinary and unusual. 996 S.W.2d at 625-29. At the time that *Williams* was decided, section 287.120.8 read, as it has since, as follows: "Mental injury resulting from work-related stress does not arise out of and in the course of the employment, unless it is demonstrated that the stress is work related and was extraordinary and unusual. The amount of work stress shall be measured by objective standards and actual events." Thus, there was no language in the statute that provided that "extraordinary and unusual" meant "extraordinary and unusual as compared to similarly-situated employees."

8

In the absence of such language, the *Williams* court looked to case law from other states to determine what sort of objective standards should be used to discern the extraordinary and unusual nature of an employee's work-related stress. *Id.* at 627-29. After considering other states' standards—some of which required comparison to the stresses encountered by similarly-situated employees, others to the stresses of the average employee—the *Williams* court was persuaded that the proper comparison for purposes of section 287.120.8 was to the stresses encountered by similarly-situated employees, regardless of employer, with a focus on the stresses of those with the same employer. *Id.* at 628. The court chose this standard *not* because it was expressed plainly by the statute, but specifically because it was flexible enough to "allow[] consideration of the employment conditions of others in the industry when an employer is too small to have other similarly situated employees or when the stress levels of a particular employer are high," and because, unlike the average-employee standard, it permitted an employee to rely on more readily-available evidence of an employee's employer *Id.* at 628-29. In adopting this reasoning—and, more broadly, in interpreting section 287.120.8 this way—the *Williams* court cited its former duty to liberally construe the Workers' Compensation statute "with a view to the public welfare." § 287.800 (RSMo 2000).

Today, however, under the strict construction mandate of the amended section 287.800—which the parties agree applies here—section 287.120.8 must no longer be interpreted to require evidence of the stress encountered by similarly-situated employees, since that requirement is not expressed by the statute's plain and unambiguous terms. Notably, it was in *Williams*, the very case on which MoDOT bases its argument for the continued application of the similarly-situated employee requirement, that the court concluded that "[section 287.120.8] *does not clearly set forth* what 'objective standards' should be used to discern the 'extraordinary and unusual' nature

of an employee's work-related stress." 996 S.W.2d at 627 (emphasis added). Indeed, at the very least, we note that section 287.120.8 does *not* unambiguously provide that employees can prove the "extraordinary and unusual" nature of their work-related stress according to "objective standards" *only* by presenting evidence of the stress encountered by similarly-situated employees. The *Williams* court established such a requirement *only* by looking beyond the text of the Workers' Compensation statute to "case law in other jurisdictions . . . to determine an objective standard for [measuring extraordinary and unusual work-related stress]." *Id.* Such reliance on outside authority in this particular context may have been proper then, but now the 2005 amendment to section 287.800 forbids us from giving particular provisions of the Workers' Compensation statute a broader application than is warranted or expressed by their plain and unambiguous terms. Accordingly, because this Court previously held in *Williams* that section 287.120.8 did not clearly set forth what "objective standards" should be used to discern the "extraordinary and unusual" nature of an employee's work-related stress, we decline to supply a standard, as we did in *Williams* by looking to cases from other states, that is not *plainly* expressed or warranted by the statute.

*The Rejection and Abrogation of Particular Cases Including* Williams

Moreover, there is a second, independent reason we find that *Williams*'s similarly-situated employee requirement no longer applies under the amended statute: the 2005 amendments specifically "reject and abrogate earlier case law interpretations on the meaning of or definition of . . . 'occupational disease', 'arising out of', and 'in the course of the employment' . . . and all cases citing, interpreting, applying, or following those cases." § 287.020.10. Thus, the amendment to section 287.020.10 rejects and abrogates *Williams*'s and its progeny's definition of "mental injury . . . *aris[ing] out of or in the course of employment*"—a form of

10

"*occupational disease*"—as being *only* those sorts of mental injuries that are shown by comparison to the work-related stresses of similarly-situated employees. *Cf. Young v. Boone Electric Coop.*, 462 S.W.3d 783, 791 (Mo.App.W.D. 2015) (en banc) (holding that under section 287.020.10, "the Legislature abrogated *all* earlier case law interpretations of the term 'accident'") (emphasis added). We are statutorily forbidden from reviving this definition. Based on two different provisions of the 2005 amendments, then, we conclude that the amended Workers' Compensation statute does not require evidence of the work stress encountered by similarly-situated employees.

<u>Evidence of Occupational Disease Arising from Mental Injury</u>

To determine the evidentiary requirements of section 287.120.8 after the 2005 amendments—and, most importantly, whether Mantia met those requirements—as stated above we are limited to what is expressed by the plain and unambiguous terms of the statute, with any ambiguities strictly construed.

By its plain language, section 287.120.8 provides that for Mantia to prove an occupational disease arising from mental injury, she must show that she suffered a mental injury resulting from stress that was "work related" and "extraordinary and unusual" as measured by "objective standards and actual events." Although none of these phrases is defined in the Worker's Compensation statute, absent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary. *Greer*, 475 S.W.3d at 666 (citing *Am. Healthcare Mgmt., Inc. v. Dir. of Revenue*, 984 S.W.2d 496, 498 (Mo.banc 1999)). Here, there is no dispute as to the plain meanings of "work related" and "actual events" and, in fact, the parties dispute only the meanings of the remaining words and phrases. The dictionary defines "extraordinary" as "(1) not according to the usual custom or regular plan; (2)

11

going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 515 (5th ed. 2014). "Unusual" means "not usual or common; rare; exceptional." *Id.* at 1587. And "objective" standards are "[o]f, relating to, or based on externally verifiable phenomena, as opposed to an individual's perceptions, feelings, or intentions." BLACK'S LAW DICTIONARY 1178 (9th ed. 2009).[3]

Given these plain meanings, there was ample competent and substantial evidence to support the Commission's finding that Mantia suffered an occupational disease arising from mental injury. MoDOT's medical expert, Dr. Stillings, testified that Mantia suffered depressive disorder the prevailing cause of which was her employment with MoDOT, and that her injury resulted in permanent partial disability. Mantia's medical expert, Dr. Jovick, added that her depressive disorder was major, and was paired with post-traumatic stress disorder. Mantia testified that during the course of her employment with MoDOT she witnessed the aftermath of a multitude of serious accidents involving catastrophic injury, dismemberment, and death. Mantia testified that in the course of her work, she accidentally kicked the decapitated head of a victim of an automobile accident; listened helplessly to the screams of a child burning to death; stepped

---

[3] The word "objective" also appears in two other places in the Workers' Compensation statute. First, section 287.020.2 defines a compensable "accident" as one that "produc[es] *objective* symptoms." (emphasis added). But the amended section 287.020.10 "reject[ed] and abrogate[d]" all our precedential cases defining "accident," and no subsequent Missouri case has addressed what the "objective symptoms" requirement means now in defining "accident."

Second, section 287.190.6(2) provides that "*objective* medical findings shall prevail" over subjective ones, with "objective" findings defined as those "demonstrable on physical examination or by appropriate tests or diagnostic procedures." (emphasis added). In cases such as *Ballard v. Woods Supermarkets, Inc.*, 422 S.W.3d 473, 477-78 (Mo.App.S.D. 2014), Missouri courts have applied this definition of "objective" medical findings straightforwardly—and consistently with the definition of "objective" given by Black's Law Dictionary—to mean the sort proved not solely by the testimony of the party seeking compensation, but also by external verification such as a doctor's diagnosis. If we apply that meaning of "objective" here, there is no question that Mantia—whom two medical experts diagnosed with depressive disorder— proved her work-related mental injury under an "objective" standard.

12

on teeth scattered across an accident scene; breathed air filled with the scent of burning flesh; observed the crushed skull of a coworker; and witnessed a woman commit suicide by jumping from the Interstate 270-Dougherty Ferry Bridge. Needless to say, witnessing such events placed stresses on Mantia more extreme than most employees will ever experience. We cannot reasonably doubt that such experiences were extraordinary and unusual. They were unmistakably exceptional and remarkable. Nor can we reasonably doubt that Mantia's stresses from these incidents stem from externally verifiable phenomena. Each stress-inciting incident was serious and violent, and many involved horribly painful deaths, a few following prolonged human suffering which Mantia witnessed.

MoDOT argues that Mantia's work stress cannot have been extraordinary and unusual because other MoDOT employees performing the same job had similar experiences. But there is nothing in the plain language of section 287.120.8 to indicate that Mantia's stress must have been extraordinary and unusual *compared to her coworkers' stresses*. MoDOT also argues that Mantia's testimony regarding how much stress she suffered as a result of her experiences was inherently subjective without other supporting testimony. We disagree. Mantia proved the stress objectively by connecting it to the undeniable trauma of actual severe automobile accidents and other violent scenes of death, destruction, and mayhem. Point I is denied.

### Point II: The Award of Permanent Partial Disability

In its second point on appeal, MoDOT argues that the Commission's finding that Mantia suffered 50% permanent partial disability was not supported by sufficient competent and substantial evidence in the record. We disagree.

It is the special province of the Commission to determine from all the evidence before it the percentage of disability attributable suffered by the claimant. *Wiedower v. ACF Industries,*

13

*Inc.*, 657 S.W.2d 71, 73 (Mo.App.E.D. 1983) (citing *Hammett v. Nooter Corp.*, 264 S.W.2d 915, 919 (Mo.App.1954)). The findings of the Commission cannot be set aside unless the Commission could not have reasonably made its findings, and the findings are clearly contrary to the overwhelming weight of the evidence. *Id.* (citing *Hammett*, 264 S.W.2d at 918). Further, the Commission is not bound by the percentage estimates of medical experts, but may consider all the evidence including the employee's testimony in arriving at a disability rating. *Id.* at 74 (citing *Malcom v. La-Z-Boy Midwest Chair Co.*, 618 S.W.2d 725, 728 (Mo.App.1981); *Blair v. Associated Wholesale Grocers, Inc.*, 593 S.W.2d 650, 655 (Mo.App.1980)).

Here, there was sufficient competent and substantial evidence in the record to support the Commission's finding that Mantia suffered 50% permanent partial disability of the whole body. Both parties' medical experts agreed that Mantia's work-related stress was the prevailing cause of her disability. Based in part on these experts' testimony and in part on Mantia's own testimony, the Commission found that she suffered from considerable psychological and physical symptoms, including panic attacks distinguished by sweating, shortness of breath, tremors, and nausea; rapid mood swings; increased irritability; difficulty controlling anger; an inability to grieve; insomnia and recurring disturbing nightmares; and social withdrawal distinguished by total isolation from friends and family for days at a time. Although the Commission stated that it was not particularly persuaded by either of the two experts' widely divergent disability ratings—2.5% on the part of Dr. Stillings and between 90 and 95% on the part of Dr. Jovick—we find that the Commission had before it sufficient competent and substantial evidence in the record to conclude that Mantia suffered 50% permanent partial disability. Point II is denied.

14

## Point III: Entitlement to Future Medical Care

In its third point on appeal, MoDOT argues that the portion of the Commission's award in which it ordered MoDOT to pay for any necessary future medical care to treat Mantia's mental injuries was not supported by sufficient substantial and competent evidence. We disagree.

Deferring to the Commission's determinations of witness credibility and the weight to be given to conflicting evidence, we conclude that there was sufficient competent and substantial evidence to support the Commission's award with respect to future medical care. Both medical experts agreed that Mantia suffered a compensable mental injury and neither opined that she had been cured. Mantia testified that she continued to suffer disabling symptoms. Moreover, Dr. Jovick opined that Mantia would need treatment for her mental injury for the foreseeable future. Thus, the Commission's award of future medical care was supported by sufficient competent and substantial evidence.

MoDOT argues that because Dr. Jovick did not see her more than once after noting that he planned to continue seeing her, she had no need for future medical treatment. But it was reasonable for the Commission to reject this argument. It simply does not follow that Mantia's failure to see *Dr. Jovick in particular*—and even if she had seen no one—means that she had *no need* for future medical treatment. Indeed, the Commission found credible Mantia's testimony that she stopped seeing Dr. Jovick *not* because she no longer needed treatment, but because she found the visits difficult since during treatment she would relive the horrors she had experienced in her time working at accident scenes for MoDOT.

MoDOT also claims that the Commission's award to Mantia of the right to future medical care was erroneous because MoDOT's medical expert, Dr. Stillings, concluded that Mantia did

15

not require "additional treatment for [her] condition" of permanent partial disability arising from mental injury. Under the applicable standard of review, the Commission was entitled to disregard this testimony in light of the above-referenced evidence regarding Mantia's ongoing symptoms and need for additional treatment. In addition, Dr. Stillings's statement in this regard is at odds with his acceptance that Mantia would likely continue to need antidepressant medication. Of course, continued anti-depressant medication would likely require the ongoing medical management by the prescribing physician. In this context, the Commission had the authority and discretion to interpret Dr. Stillings's statement regarding "additional treatment" to mean merely that Mantia did not need any additional treatment *beyond the anti-depressant medicine treatment* he anticipated she would continue to need. Point III is denied.

## Conclusion

For the reasons stated above, we affirm the Commission's award.

_____
James M. Dowd, Judge

Robert M. Clayton III, P.J., and
Lawrence E. Mooney, J., concur.

16