

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| NADINE McCOMB, | ) |
| | ) |
| Appellant, | ) |
| | )   WD77761 |
| v. | ) |
| | )   OPINION FILED: |
| | )   September 6, 2016 |
| GREGORY NORFUS and DAVID | ) |
| CHEESE, | ) |
| | ) |
| Respondents. | ) |

### Appeal from the Circuit Court of Cole County, Missouri
### The Honorable Jon E. Beetem, Judge

**Before Division Two:** Anthony Rex Gabbert, Presiding Judge,
Karen King Mitchell, Judge, and Joseph M. Ellis, Senior Judge[1]

Nadine McComb (Wife) appeals the grant of summary judgment in favor of Respondents,

Gregory Norfus and David Cheese, in her action for wrongful death of her husband, Edward

McComb (Husband). Husband died as the result of a single-car accident after his vehicle slid off

an icy road while he was driving as part of his job duties as a courier for St. Mary's Health Center.

Respondents were Husband's supervisors at the time of his death. Wife argues that summary

---

[1] Judge Ellis retired as an active member of the court on March 1, 2016, after oral argument in this case. He has been assigned by the Chief Justice to participate in this decision as Senior Judge.

judgment was improper because there exists a genuine dispute of material fact as to whether Respondents were simply carrying out their employer's non-delegable duty to maintain a safe work environment, or whether they breached a personal duty of care owed to Husband, when they directed him to drive his route in bad weather conditions. We agree with Wife, reverse the grant of summary judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

## Factual Background[2]

On January 26, 2009, Husband worked as a courier for St. Mary's Health Center in Jefferson City. Norfus was his immediate supervisor, and Cheese supervised both Husband and Norfus. On that day, Husband was scheduled to work from 3:30 p.m. until 11:30 p.m., delivering medical supplies and other materials to various clinics around the mid-Missouri area. That same day, a dangerous winter storm, which created hazardous driving conditions and prompted the governor to declare a state of emergency, moved into the area.

Before Husband's scheduled shift, Norfus contacted Cheese to see if Husband should drive his route despite the conditions. Cheese directed Norfus to have Husband drive the route, but indicated that Husband should do so slowly and carefully. Cheese did not inform himself of the impending weather conditions before making the decision that Husband should drive his route. Sometime in the middle of Husband's shift, Norfus called to check in with Husband. At that time, Husband reported that his windshield was freezing. Norfus again contacted Cheese to see if they should pull Husband from his route due to the weather conditions. Cheese determined that

---

[2] We view the facts "in the light most favorable to the party against whom summary judgment was granted, and all the facts properly pled by the nonmoving party and all inferences therefrom are assumed as true." *Hill v. Gov't Employee Ins. Co.*, 390 S.W.3d 187, 190 (Mo. App. W.D. 2012) (quoting *Waldrop v. Shelter Mut. Ins. Co.*, 221 S.W.3d 401, 403 (Mo. App. W.D. 2006)).

Husband should continue. At the time, Husband was not carrying any vital organs or "STAT" materials (ones needed immediately by a facility).

Near the end of Husband's shift, he slid off the road, flipping his vehicle several times, leading to his death. Wife subsequently sued Respondents, arguing that they were negligent in sending Husband out on his courier route despite the hazardous road conditions. Respondents sought summary judgment, arguing that Wife's suit was barred by the workers' compensation statute's exclusivity provision. Respondents argued that Wife could not demonstrate that Respondents owed any personal duty of care to Husband beyond their employer's non-delegable duty to maintain a safe work environment. The court agreed and granted Respondents' motion for summary judgment. Wife appeals.

## Standard of Review

"When considering appeals from summary judgments, [an appellate c]ourt will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* Our review is de novo because "[t]he criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Thus, "[t]he propriety of summary judgment is purely an issue of law." *Id.* "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

3

## Analysis

Wife raises a single point on appeal. She argues that summary judgment was improper because there exists a genuine issue of material fact regarding whether Respondents' actions constituted a breach of their employer's non-delegable duty to maintain a safe work environment, or a breach of their own personal duty of care owed to Husband, when they directed Husband to drive his courier route in hazardous driving conditions. We agree.

### A. Co-employee liability and workers' compensation exclusivity

The current version of the Workers' Compensation Act's exclusivity provision states:

> Any employee of [an] employer [subject to the Act] shall not be liable for any injury or death for which compensation is recoverable under this chapter and every employer and employees of such employer shall be released from all other liability whatsoever, whether to the employee or any other person, except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.

§ 287.120.1.[3] Husband's death, however, occurred in 2009, when the law regarding co-employee liability was in a state of flux.

In 2009, before the current version, the Act's exclusivity provision referred to only employers and not co-employees. *See Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo. App. W.D. 2010). Until 2005, the statute was required to "be liberally construed with a view to the public welfare." § 287.800, RSMo Cum. Supp. 2004. The liberal-construction mandate led courts to broadly construe the term "employers" in the exclusivity provision to also exempt co-employees from liability, except where the co-employee engaged in "something more" than a breach of the employer's non-delegable duty to provide a safe workplace. *See Robinson*, 323 S.W.3d at 422-23.

---

[3] All statutory citations are to the Revised Statutes of Missouri.

4

In 2005, however, the law was amended to require strict, rather than liberal, construction. § 287.800, RSMo Cum. Supp. 2005. "Strict application of the definition [of 'employer'] require[d] us to . . . conclude that co-employees [we]re not entitled to invoke the employer immunity under Section 287.120." *Robinson*, 323 S.W.3d at 424.[4] Thus, we held in *Robinson* that "[t]he employee retains a common law right of action against co-employees who do not fall squarely within the definition of 'employer.'" *Id.* at 425; *see also Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 790 (Mo. banc 2016) ("[T]he plain language of the exclusivity provisions did not preclude [employees] from pursuing a common law negligence claim against . . . co-employee[s].").

This Court later clarified the holding in *Robinson*, noting that "*Robinson* neither created nor defined the rights or remedies of an injured person against co-employees but merely acknowledged that whatever rights and remedies were available 'at common law or otherwise' were not barred by the exclusivity provision of the Act." *Hansen v. Ritter*, 375 S.W.3d 201, 207 (Mo. App. W.D. 2012); *accord Peters*, 489 S.W.3d at 791. After discussing the fact that employers have five non-delegable duties related to safety,[5] we noted that, "at common law, the negligence of an employee in performing an employer's non-delegable duties did not affect an injured employee's right to seek recovery from the employer." *Id.* at 208-09. We recognized that "[t]he practical rationale for refusing to impose on co-employees a legal duty *to fellow employees* to perform an employer's non-delegable duties was grounded in the recognition that said duties 'often concern matters beyond the control of individual employees.'" *Id.* at 210 (quoting *Kelso v. W.A.*

---

[4] Recently, the Missouri Supreme Court clarified that extending immunity "to co-employees . . . was inconsistent with established workers' compensation law precedent and resulted in the adoption of a standard not supported under any construction of the workers' compensation law's exclusivity provision." *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 790 (Mo. banc 2016).

[5] Those duties are: (1) "'to provide a safe workplace; (2) to provide safe equipment in the workplace; (3) to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware; (4) to provide a sufficient number of competent fellow employees; and (5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety.'" *Hansen v. Ritter*, 375 S.W.3d 201, 208 (Mo. App. W.D. 2012) (quoting *Gunnett v. Girardier Bldg. & Realty Co.*, 70 S.W.3d 632, 638 n.8 (Mo. App. E.D. 2002)).

*Ross Constr. Co.*, 85 S.W.2d 527, 534 (Mo. 1935)). Thus, "[c]o-employees do not independently owe a duty to fellow employees to perform the employer's non-delegable duties." *Id.* at 213. Consequently, at common law, it is only when "a co-employee . . . has violated an *independent* duty to an injured employee [that the co-employee] will be 'answerable to such person for the consequences of his negligence.'" *Id.* (quoting *Giles v. Moundridge Milling Co.*, 173 S.W.2d 745, 751 (Mo. 1943)).

In *Leeper v. Asmus*, 440 S.W.3d 478 (Mo. App. W.D. 2014), we recognized that *Hansen* left unanswered questions. Specifically, "*Hansen* did not 'definitively determine the precise parameters of a co-employee's personal duties to a fellow employee sufficient to support an actionable claim of negligence.'" *Id.* at 483 (quoting *Hansen*, 375 S.W.3d at 217). After noting that "some workplace injuries at common law could not be attributed to a breach of the employer's nondelegable duties, and were instead attributable to the fault of the injured employee or of a co-employee," we recognized that, "[t]o assign responsibility for a workplace injury at common law, the necessary starting point was to first determine whether the injury was *caused* by a breach of the employer's nondelegable duties."[6] *Id.* at 485 (emphasis added). Thus, we held that, "for workplace injuries occurring between the effective dates of the 2005 and 2012 amendments of the Act, the common law . . . must be applied to determine *whether* a co-employee owes a duty of care in negligence." *Id.* at 493-94 (emphasis added).

---

[6] In so holding, we also rejected the *refined* "something more" test that had been previously articulated in *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo. App. E.D. 1982) (en banc) and used to determine whether a co-employee owed a personal duty of care to the injured employee. *Leeper v. Asmus*, 440 S.W.3d 478, 491-94 (Mo. App. W.D. 2014). But we noted that "the 'something more' test as *originally* announced in *Badami* was indistinguishable from the common law." *Id.* at 490. And the Missouri Supreme Court agreed, reaffirming the "something more" test as originally articulated in *Badami*. *Peters*, 489 S.W.3d at 797 ("*Badami*'s 'something more' analysis was consistent with common law co-employee liability principles. Accordingly, cases applying the 'something more' test can still prove instructive in a common law analysis.").

6

In *Peters*, the Missouri Supreme Court overruled our decision in *Leeper*, but only "to the extent that it holds that the existence of a duty is not purely a question of law." *Peters*, 489 S.W.3d at 794 n.8. All other parts of our *Leeper* decision remain good law, including our holdings that "the starting point is to *first* determine whether a workplace injury is attributable to a breach of the employer's nondelegable duties" and that this *causation* (as opposed to *existence*) determination "is a question of fact." *Leeper*, 440 S.W.3d at 489, 494.[7]

## B. The source of the duty breached is an issue of material fact that remains in dispute.

To be entitled to summary judgment, the moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c).[8] "For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.*

As we made clear in *Leeper*, the threshold question of "whether a workplace injury is attributable to a breach of the employer's nondelegable duties is a question of fact." *Leeper*, 440 S.W.3d at 494. And it is one that is "unique to the workplace." *Id.* at 488.

> [It is] influenced by, among other things: the nature of the employer's work; the risks and perils attendant to doing the employer's work as directed; whether the instrumentalities of the work are safe; whether a co-employee causing injury was acting as directed by the employer; whether the methods for performing the work are safe; the competency of the employees hired to perform the work; the training of employees; the rules and regulations of the workplace adopted by the employer to protect workers from the risks and perils of the work about which the employer should have known; the communication and enforcement of these rules and regulations; and other facts or circumstances which might tend to establish the existence of a risk or peril that, through the exercise of ordinary care, the employer could reasonably have acted to prevent.

---

[7] Though Judge Fischer, in his concurrence, advocated overruling *Leeper* entirely, the Court rejected that approach. *Peters*, 489 S.W.3d at 800-01 (Fischer, J., concurring).

[8] All rule references are to the Missouri Supreme Court Rules (2015) unless otherwise noted.

*Id.* Indeed, as our Supreme Court recognized, "[t]he *scope* of the employer's duty to provide a safe workplace . . . is dependent on several factors, including the nature of the employer's work and the risks associated with the work." *Peters*, 489 S.W.3d at 795 (emphasis added). "If, after considering all relevant facts and circumstances, an employee's workplace injury can be attributed to the employer's breach of a nondelegable duty, then a negligent co-employee owes no duty in negligence to the injured employee as a matter of law." *Leeper*, 440 S.W.3d at 488. Here, the relevant facts and circumstances are still in dispute; thus, summary judgment was improper.[9]

According to *Leeper*, an "employer's nondelegable duties are expansive and continuing in nature, [but] they are not unlimited." *Id.* at 485. "An employer must create a safe work environment, and must take precautions to protect against foreseeable risks and perils in the work environment . . . ." *Id.* But "[e]mployers are not insurers of the safety of employees." *Id.* (quoting *Graczak v. City of St. Louis*, 202 S.W.2d 775, 777 (Mo. 1947)). The specific non-delegable duties associated with an employer's general duty to use reasonable care are: "To see that the place of work is reasonably safe; to see that suitable instrumentalities are provided; and *to see that those instrumentalities are safely used.*" *Id.* at 487 (quoting *Kelso*, 85 S.W.2d at 534) (emphasis added). "[T]he manner in which instrumentalities are used may make a place safe or unsafe as a place of work, and, therefore, the duty to see that instrumentalities are safely used may become the most important element in the safety of a workman in his place of work . . . ." *Id.* (quoting *Kelso*, 85 S.W.2d at 535). In short, an employer has a duty to provide a "'safe method of work,' by

---

[9] Our case is distinguishable from the Missouri Supreme Court's recent decision in *Parr v. Breeden*, 489 S.W.3d 774, 776 (Mo. banc 2016), where the Court affirmed the grant of summary judgment in a co-employee negligence claim. In *Parr*, the issue was whether the plaintiffs had adequately alleged the *existence* of a duty on the part of the co-employees that was separate and distinct from the employer's non-delegable duty to maintain a safe workplace. *Id.* at 778-79 ("The element at issue in this case is the existence of a duty owed by the defendants to Mr. Parr."). Here, the issue is not whether there *exists* a duty of care but rather what the *scope* of that duty was, and whether Husband's co-employees were acting within or outside the scope of their employer's duty to maintain a safe workplace at the time of Husband's death.

8

'prescrib[ing] rules sufficient for its orderly and safe management.'" *Id.* (quoting *Kelso*, 85 S.W.2d at 535). That being said, however, "the rule that the master is bound to see that the environment in which a servant performs his duties is kept in a reasonably safe condition is not applicable where that environment becomes unsafe solely through the default of that servant himself, or of his fellow employees." *Id.* at 488 (quoting *Kelso*, 85 S.W.2d at 536). In other words, "[w]hen . . . the employee's injuries result from a co-employee's negligence in carrying out the details of the work, the injuries are attributable to the co-employee's breach of a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace." *Peters*, 489 S.W.3d at 796.

In the context of this case, where the hospital employed individuals to work as couriers, the risk posed to drivers during inclement weather was obvious and foreseeable. Therefore, the scope of the employer's duty to provide a safe workplace included the need for policies to address this obvious, foreseeable risk. In this situation, to determine whether Husband's death was attributable to the breach of a non-delegable duty of his employer or if it was, instead, attributable to a personal duty owed to Husband by either Norfus or Cheese or both, there are several questions yet to be answered. The first question is whether St. Mary's had a policy regarding whether couriers should be sent on their route during inclement weather.[10] (And, as a related question, whether St. Mary's defined what constituted "inclement weather.") According to *Leeper*, St. Mary's should have had such a policy in order to comply with its non-delegable duty to ensure that the instrumentality at issue (Husband's vehicle) was safely used. *See Leeper*, 440 S.W.3d at

---

[10] An employer's policy can be communicated either in writing or orally. Even if a policy exists, whether it provides a safe workplace may depend upon whether the policy is communicated effectively and whether training and supervision are provided. Other facts, such as the employer's awareness and acceptance of deviations from the policy are also relevant. *See, e.g., Peters*, 489 S.W.3d at 799 (holding that the scope of the employer's non-delegable duty to provide a safe workplace included an unsafe manner of work performance where the unsafe manner, through employer acceptance, had become "standard operating procedure[].").

492 (where an employer fails to ensure that the workplace and work methods are safe, only the employer will be responsible in negligence). Thus, if it did not have such a policy, then Husband's death would be attributable to his employer's failure to discharge its non-delegable duties to provide Husband with a safe workplace and to ensure that the work instrumentalities were safely used, and Norfus and Cheese would face no personal liability.[11]

The second question is, if St. Mary's had such a policy, whether Norfus and Cheese followed that policy by sending and keeping Husband on his route during the hazardous weather conditions present on January 26, 2009. If so, according to *Leeper*, Husband's death would have been attributable to St. Mary's non-delegable duty to ensure that Husband's work place was safe. *See id.* at 493 ("Charging a co-employee with the personal duty to protect a fellow employee from the risk of operating a dangerous instrumentality of work violates a core maxim by ascribing to the employee the responsibility of performing the employer's nondelegable duties."). If not, however, Husband's death may have been attributable to a personal duty owed by his co-employees. *See id.* at 496.

The third question is, if St. Mary's had a policy that required the termination of courier service during certain inclement weather situations, and Norfus and Cheese violated that policy by

---

[11] During oral argument, both parties agreed that St. Mary's did *not* have a policy regarding whether couriers are to maintain their routes during inclement weather. Generally, an admission of fact made in oral argument does not constitute a true judicial admission, but more often amounts to nothing more than an admission against interest. A judicial admission "is a more or less formal act done during a judicial proceeding which waives or dispenses with the production of evidence and concedes for litigation purposes that a certain proposition is true." *Hewitt v. Masters*, 406 S.W.2d 60, 64 (Mo. 1966). "A judicial admission must be clear and unqualified." *Goudeaux v. Board of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 519 (Mo. App. W.D. 2013). Seldom are questions during oral argument so clear and unambiguous, or the answers of counsel so precise and unqualified, as to amount to true judicial admissions. An admission against interest, on the other hand, "is usually some form of self-contradiction, and which is merely an item of evidence . . . , an inconsistency which discredits, in greater or lesser degree, [a party's] present claim and his other evidence, . . . [and] is to be considered along with the other evidence and circumstances of the case." *Mitchell Engineering Co., A Div. of CECO Corp. v. Summit Realty Co., Inc.*, 647 S.W.2d 130, 141 (Mo. App. W.D. 1982). As such, typically a trier of fact must judge the credibility and weight to be attributed thereto. Accordingly, it is seldom that an "admission" made during oral argument on appeal can be dispositive of any matter in that appeal.

sending and keeping Husband on his courier route on the date of his death, whether their actions, alone, rendered Husband's otherwise safe work environment unsafe. If so, then Husband's death was likely attributable to a personal duty owed him by Norfus and Cheese, subjecting them to potential liability under the common law. *See Leeper*, 440 S.W.3d at 496 (co-employee liability may exist where allegations in the petition suggest that a co-employee "made what was otherwise a safe workplace and safe instrumentality of work unsafe" by "fail[ing] to follow specific instructions imposed [by the employer] to [e]nsure safe operation of" a work instrumentality).

Given the timing of the *Leeper* decision in relation to the filing of the suggestions in support of and opposition to summary judgment below, the parties understandably did not focus on the scope of St. Mary's non-delegable duty to provide a safe workplace as related to either the existence or the effect of any policy regarding couriers driving in hazardous weather conditions.[12] Nevertheless, the record reflects that this is a matter that remains in dispute, thus precluding summary judgment.

In some of their suggestions, Respondents asserted that St. Mary's had no policy regarding couriers driving in hazardous weather conditions. ("There was no inclement weather policy which affected the courier's position and advised supervisory staff when the courier should and should not drive.") But Husband's job description, filed as an exhibit, suggests that St. Mary's may, in fact, have had some relevant policy provisions in place. For example, one of Husband's job duties was to be aware of a safety code identified as "Code Operation Weather Warning/Watch"; another was to clear snow or frost "for STAT runs in winter months"; and yet a third was to "complete

---

[12] Wife's First Amended Petition alleged that both Norfus and Cheese were negligent for, among other things, "[f]ail[ing] to implement and/or follow safety guidelines governing the deployment of couriers in conditions involving hazardous and dangerous road conditions including ice and snow slick roadways." As discussed above, the failure to implement safety guidelines would have been encompassed within the employer's non-delegable duty to maintain a safe workplace, whereas the failure to follow safety guidelines could have established a breach of a personal duty owed to Husband by Respondents.

11

tasks in inclement weather." Cheese testified in a deposition, however, that a courier's job duties did not require him to perform pickups and deliveries "in severe winter weather when a state of emergency has been called." Thus, the record reflects that there is an unresolved dispute as to the material facts of whether St. Mary's had applicable rules or regulations in effect and whether Norfus and Cheese complied with any existing rules or regulations. In other words, the factual issue regarding the *scope* of St. Mary's non-delegable duty to provide a safe workplace remains in dispute. Until that question is answered, it is impossible to discern whether Husband's death was due to the breach of his employer's non-delegable duties or to the breach of a personal duty owed to Husband by Respondents. Accordingly, summary judgment cannot lie.

## Conclusion

Because there remains a genuine issue of material fact regarding the scope of the duty allegedly breached, Respondents were not entitled to summary judgment. Thus, the court's judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Karen King Mitchell, Judge

Anthony Rex Gabbert, Presiding Judge,
and Joseph M. Ellis, Senior Judge, concur.

12